# UNITED STATES DISTRICT COURT
## Southern District of Florida
### Case Number: _____
### 15-81522-CV-Marra/Matthewman

FILED by _OTS_ D.C.
ELECTRONIC

**November 4, 2015**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

**KAREN C. YEH HO**
**Plaintiff,**

v.

**WELLS FARGO BANK, N.A.**
**Defendant.**

_____/

## COMPLAINT

COMES NOW, Karen C. Yeh Ho, the Plaintiff, respectfully allege as follows:

### INTRODUCTION

1. This is a civil action filed by the Plaintiff against Wells Fargo Bank, N.A., the Defendant, for violation of Loss Mitigation Procedures related to the servicing of a residential mortgage and wrongful foreclosure as a result; for Defendant misconduct and tort in obtaining property using fraudulent documents and breach of contract fraud.

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action because it is brought under Federal Consumer Financial Protection Act Law 12 CFR §1024.41 Loss Mitigation Procedures.

3. This Court has subject matter jurisdiction over the statue 12 USC §2605(f) related to the enforcement of 12 CFR §1024.41.

4. This Court has subject matter jurisdiction over the statue 12 USC §5531(a) and §5536, 18 USC §1343, 12 USC §5481, 15 USC §1692 and FDUTPA (Florida Deceptive and Unfair Trade Practices Act).

5. This action for damages exceeds Seventy-Five Thousand Dollars ($75,000.00) exclusive of pre-judgment interest, costs, and attorney's fee.

6. Venue is proper in this District as the property under foreclosure is located in Palm Beach County in the Southern District of Florida. 28USC 1391(a)(2).

## STATEMENT OF FACTS

7. The Defendant filed a complaint against Karen C. Yeh Ho, a residence of Palm Beach County to foreclose on her property located in Palm Beach County in the State of Florida, property address: 8038 Tangelo Drive, Boynton Beach, FL 33436, in the 15th Judicial Circuit Court in and for Palm Beach County, Florida, case number: 502012CA002992.

8. Plaintiff submitted answer to complaint and affirmative defense on June 20, 2012 denying and objecting to all charges based on lack of standing amongst other defenses.

9. On or about August 2013, Karen received an unsolicited package from Wells Fargo Bank making a written offer for a Streamline Loan Modification.

10. The Defendant offered streamline loan modification without additional paperwork required to the Plaintiff to stay in the home with the following conditions a) 3 trial payments, b) continuing to make payments on time, c) signature of the final modification documents. (exhibit A)

11. The Defendant accepted the 3 trial payments by the Plaintiff. (exhibit C)

12. On or about November 2013, she received the written permanent streamline loan modification package. The package was completed and sent back on time. (exhibit B, exhibit C)

13. The Defendant received the executed permanent streamline loan modification package from the Plaintiff on or about December 6, 2013. (exhibit C)

14. The Defendant accepted 2 additional loan modification payments on or about December 2013 and January 2014. (exhibit C)

15. The Defendant rejected February 2014 and subsequent monthly payments. (exhibit C)

3

16. The Defendant did not provide Karen with a written confirmation and indication on the completeness of the package within 5 business days after they received the package.

17. The Defendant also did not provide Karen a written response on acceptance or other modification options within 30 days after it received the permanent streamline loan modification package.

18. The Defendant did not provide any written response to the rejection of payment until on or about December 17, 2014 over 1 year after sending in the permanent streamline loan modification package after she filed a complaint to CFPB on or about December 3, 2014. (Exhibit C).

19. (12 CFR §1024.41(g)): Stopping the foreclosure process or sale after the loan has been referred to foreclosure. "If the borrower submits a complete loss mitigation application after the loan is put in foreclosure, but more than 37 days before a sale, the servicer must not seek a foreclosure judgment, order of sale, or conduct a foreclosure sale while the application is under review. Same exceptions as outlined above apply. The servicer must not restart the foreclosure process unless one of three conditions is satisfied: (1) borrower has been sent a notice that he or she is not eligible for any loss mitigation options and this decision cannot be appealed or the borrower can appeal the decision but has not requested

4

a timely appeal or the appeal was denied; (2) borrower rejects all options offered by the servicer; or (3) borrower fails to perform under loss mitigation agreement."

20. The Defendant received permanent loan modification package on or about December 6, 2013.

21. The Plaintiff made the streamline loan modification payment on January 1, 2014.

22. The Defendant accepted January 1, 2014 streamline loan modification payment.

23. The Defendant sought a foreclosure judgment after on or about December 6, 2013.

24. The Defendant ordered the sale after on or about December 6, 2013.

25. The Defendant conducted a foreclosure sale after on or about December 6, 2013.

26. The Defendant made payment on September 1, 2013.  That is more than 37 days as required by CFPB. "If the borrower submits a complete loss mitigation application after the loan is put in foreclosure, but more than 37 days before a sale, the servicer must not seek a foreclosure judgment, order of sale, or conduct a foreclosure sale while the application is under review."

5

27. The Defendant fails to perform under CFPB Mortgage Servicing Rules

   12 CFR § 1024.41 (g).

28. The Plaintiff made timely payments since the trial modification

   September 2013, October 2013, November 2013.

29. The Plaintiff made timely payments since the permanent loan

   modification December 2013, January 2014.

30. The Defendant refused Plaintiff's payments after January 1, 2014. The

   payment for February 2014, March 2014, April 2014, May 2014, June

   2014, July 2014, August 2014, September 2014, October 2014,

   November 2014 permanent loan modification monthly payment was

   refused.

31. The Plaintiff did not "fail to perform under loss mitigation agreement."

32. The Defendant did not send a notice that Plaintiff is not eligible for any

   loss mitigation option.

33. The Defendant did not send " this decision cannot be appealed." After

   December 6, 2013.

34. The Defendant did not send " the borrower can appeal the decision but

   has not requested a timely appeal." After December 6, 2013.

35. The Defendant did not send " the appeal was denied." After December 6,

   2013.

6

36. The Defendant did not send Plaintiff a notice of rejection on all options offered by the servicer after December 6, 2013.

37. On or about March 14, 2014, Karen filed a Motion to Dismiss due to permanent streamline loan modification.

38. She hired Harrington Law around June 2014 to help with the process of making sure Wells Fargo honor the contract of the permanent streamline loan modification.

39. The Defendant motioned for default filed on May 8, 2014 and May 12, 2014.

40. The Defendant filed foreclosure status form on May 28, 2014.

41. The Defendant filed witness and exhibition list on June 9, 2014

42. The Defendant filed order setting residential foreclosure non jury trial on June 10, 2014.

43. The Plaintiff on or about July 15, 2014 through Harrington Law filed motion for continuance with completed streamline permanent loan modification package attachment.

44. The Defendant on July 17, 2014, signed the Consent Judgment with Harrington Law without Karen's knowledge, consent, signature on the consent judgment document.  (Exhibit D )

7

45. The Defendant obtain a fraudulent Consent Judgment for Foreclosure without her knowledge and consent and no signature of hers on the consent judgment (Exhibit D )

46. The Defendant violated 12 CFR 1024.41(g)—the Defendant is supposed to do everything they can to prevent foreclosure judgment and foreclosure sales date.

47. The Defendant continuing to promise Plaintiff that they need 45 days for the executives to sign paperwork and to be filed in the public records to complete the permanent streamline loan modification.

48. The Defendant after obtaining fraudulent consent judgment then obtained the Final Judgment of Foreclosure on July 17, 2014 without Karen's knowledge, consent, and signature.

49. The Plaintiff filed on or about November 10, 2014, Motion to cancel foreclosure sale date due to permanent streamline loan modification.

50. At the November 12, 2014's hearing to cancel the sale date, the Defendant again denied there was a permanent loan modification when it was filed on the July 15, 2014's motion for continuance.

51. The Defendant obtained Court order denying the motion to cancel the first and only foreclosure sale date due to Defendant's objection to cancel the foreclosure sale date.

8

52. The Defendant obtained sale date on November 14, 2014.

53. The Defendant sold the house at 8038 Tangelo Drive, Boynton Beach, FL 33436 for $250,100 on November 14, 2014 at 10 am.

54. The Defendant informed the Plaintiff that she does not own the house on November 14, 2014.

55. The Plaintiff on or about November 14, 2014 filed an Objection to the sale and vacate the Final Judgment due to fraud.

56. On or about January 16, 2015, the Court denied the Objection to the sale and Vacate the Final Judgment due to Fraud and order issue of Certificate to Title.

57. The third party obtained Certificate of Title on January 30, 2015.

58. The Plaintiff could have kept her house at 8038 Tangelo Drive, Boynton Beach, FL 33436 if the Defendant did not foreclose on the house while she honors the streamline loan modification.

59. The Defendant negated on the streamline loan modification contract and violated CFPB Mortgage Servicing Rules, 12 CFR 1024.41 of "stopping the foreclosure process or sale after the loan has been referred to foreclosure."

60. The Plaintiff suffers more than $362,000 loss of her money that she invested on the property, opportunity cost of rental income and the fees

9

and cost to defend the foreclosure due to Defendant's violation of Federal

Law 12 CFR 1024.41(g). (Exhibit E)

61. The Plaintiff suffers more than $362,000 loss of her money that she

invested on the property and the fees and cost to defend the foreclosure

due to Defendant's illegal activities of using consent judgment without

Plaintiff's knowledge and signature. (Exhibit E)

62. The Plaintiff suffers more than $362,000 loss of her money that she

invested on the property and the fees and cost to defend the foreclosure

due to Defendant's misconduct to breach the permanent streamline loan

modification contract by refusing Plaintiff's monthly streamline

permanent loan modification payment. (Exhibit E)

63. The Defendant's additional of $96,000 to the principal of the loan as the

term for the streamline loan modification is an extortion preying on

Plaintiff's eagerness to keep her house. (exhibit C )

64. The Defendant increase of homeowner's monthly payment by more than

$500 per month as the term for streamline loan modification is an

extortion preying on Plaintiff's eagerness to keep her house.  (exhibit C )

65. The Defendant increase of homeowner's monthly payment by more than

$500 per month as the term for streamline loan modification does not

comply with the government funded loan modification programs.

10

66. The Defendant wrongfully forecloses on the house, obtaining property using fraudulent consent judgment and false promise in violation of common tort law.

## COUNT I – VIOLATION OF LOSS MITIGATION PROCEDURES LAW

67. The allegations in paragraphs 1 through 66 above are incorporated herein by reference.

68. Plaintiff enforces the provisions of 12 CFR §1024.41, Loss Mitigation Procedures, pursuant to 12 U.S.C. §2605 (f). (Exhibit F & G)

(b)(2)(B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (b)(2)(ii) of this section. The notice to the borrower shall include a statement that the borrower should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options.

(c) *Evaluation of loss mitigation applications.* (1) *Complete loss mitigation application.* If a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall:
(i) Evaluate the borrower for all loss mitigation options available to the borrower; and

11

(ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage loan.

(g) *Prohibition on foreclosure sale.* If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale

69. The Defendant violations on 12 CFR §1024.41 is laid out in Figure 1 below



## Permanent Loan Modification Was In Place & Complaints Should Be Dismissed
### 12 C.F.R. 1024.41

**OFFER:** Streamline Loan Modification offered, no paperwork required, on or about August 2013

**ACCEPTANCE:** PLAINTIFF Received COMPLETED Permanent Loan Modification package on or about 12/4/2013; Permanent Loan Modification completed

Complaint should be dismissed December 2013

**Wells Fargo 12 CFR 1024.41 violations:**
-Did not notify borrower per paragraph (b), (c) for alleged loan modification paperwork issue.
-Practiced dual tracking foreclosure prohibited by paragraph (g)

(b)(2)(B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete.

(c) *Evaluation of loss mitigation applications.* (1) *Complete loss mitigation application.* If a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation application, servicer shall:
(i) Evaluate the borrower for all loss mitigation options available to the borrower; and
(ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage loan.

(g) *Prohibition on foreclosure sale.* If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:(1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;(2) The borrower rejects all loss mitigation options offered by the servicer; or(3) The borrower fails to perform under an agreement on a loss mitigation option.

**FIGURE 1**

12

70. Defendant refuses to honor the written permanent streamline loan modification contract: completed with an offer, acceptance, and the meeting of the minds.

71. The Defendant failed to provide written notice on receiving the permanent streamline loan modification within 5 days of receiving the permanent streamline loan modification package.

72. The Defendant failed to provide written notice on some alleged issues related to permanent streamline loan modification package within 30 days of receiving the permanent streamline loan modification package.

73. The Defendant did not honor "No foreclosure sale of the property was scheduled within 37 days after the Defendant received the permanent streamline loan modification package."

74. The Defendant violates 12 CFR §1024.41(b) failing to provide written notification to acknowledge receiving and on completeness of the loss mitigation documents.

75. The Defendant violates 12 CFR §1024.41(c) failing to provide written notification on evaluation of the loss mitigation documents.

76. The Defendant did not honor The National Mortgage Settlement section IV.B.4: 12 CFR §1024.41(g), "The foreclosure process may not move forward after referral to a foreclosure attorney if the servicer receives a

13

complete loan modification application within 30 days after the letter from the foreclosure attorney. The servicer must not seek a foreclosure judgment, court order of sale, or foreclosure sale date while the loan modification application is under consideration. Note that only the initial letter (sent within 5 business days of referral) from the foreclosure attorney will give borrowers 30 days to submit a complete loan modification application."

77. The Defendant failed to comply with its National Mortgage Settlement consent judgment section IV.F to acknowledge receiving and on completeness of the loss mitigation documents.

78. The Defendant failed to comply with its National Mortgage Settlement consent judgment section IV.A to provide written notification on evaluation of the loss mitigation documents.

79. The Defendant filed multiple dispositive motions for the foreclosure of the property including but not limited to default judgment, filing of documents in preparation of foreclosure trial and setting of foreclosure trial.

80. The Defendant filed the fraudulent consent judgment that is without Defendant's knowledge, consent, and signature on July 17, 2014.

14

81. The Defendant used the fraudulent consent judgment to obtain final judgment from the 15th circuit court on July 17, 2014.

82. The Defendant failed to disclose to the 15th Judicial Circuit Court the streamline permanent loan modification and misled the court to deny motion for continuance to prevent final judgment and foreclosure sale.

83. The Defendant violates 12 CFR 1024.41(g) prohibiting dual tracking foreclosure while a streamline permanent streamline loan modification is in place.

84. The Defendant failed to comply with section IV.B of its National Mortgage Settlement consent judgment to stop dual tracking foreclosure practice.

85. Plaintiff lost her property and money investments as a result. Plaintiff is entitled to recover money invested into the property caused by Defendant's violation. Plaintiff is entitled to recover legal cost and fee caused by Defendant's violation.

86. Plaintiff is entitled to Damages –12 U.S.C. §2605 (f)  RESPA entitles borrowers to a private right of action based on violation of the Act. Damages for individuals include: (1) Any actual damages to the borrower as the result of the failure.  (2) Any additional damages, as the court may

allow, in the case of a practice or pattern of noncompliance, an amount up to $2,000 for each such violation.

## <u>COUNT II – FRAUD IN THE INDUCEMENT</u>

87. The allegations in paragraphs 1 through 66 above are incorporated herein by reference.

88. Defendant engaged in the tort of deceit.

89. Defendant represented to Plaintiff in writing that Plaintiff was approved for a streamline permanent loan modification. (exhibit A, exhibit B)

90. Defendant represented to Plaintiff in writing that after all trial period payments are timely made, Defendant would permanently modify Plaintiff mortgage.

91. Defendant, by and through its agents, employees and representatives, made false statements regarding a material fact.

92. Defendant knew or should have known the representation was false.

93. Defendant had no reasonable ground for these representations to be true when in fact, these representation were false.

94. Defendant intended that the representation induce Plaintiffs to act on it.

95. Plaintiff suffered damages in justifiable reliance on the representation.

16

96. Plaintiff lost her property and money investments as a result. Plaintiff is entitled to recover damage caused by Defendant's violation. Plaintiff is entitled to recover legal cost and fee caused by Defendant's violation.

## COUNT III – FRAUDULENT MISREPRESENTATION

97. The allegations in paragraphs 1 through 66 above are incorporated herein by reference.

98. Defendant engaged in the tort of deceit.

99. Defendant represented to Plaintiff that the Plaintiff is approved for a streamline permanent loan modification.

100. Defendant represented to Plaintiff that after all trial period payments are timely made, Defendant would permanently modify Plaintiff mortgage.

101. Defendant, by and through its agents, employees and representatives, made a false statement regarding a material fact.

102. Defendant made false statements regarding a material fact.

103. Defendant knew or should have known the representation was false.

104. Defendant intended that the representation induce Plaintiff to act on it.

105. Plaintiff suffered damages acting in reliance on the representation.

106.   Plaintiff lost her property and money investments as a result.  Plaintiff

is entitled to recover damage caused by Defendant's violation.  Plaintiff

is entitled to recover legal cost and fee caused by Defendant's violation.

## COUNT IV – FLORIDA DECEPTIVE AND UNFAIR TRADE

## PRACTICES ACT (FDUTPA)

107.   The allegations in paragraphs 1 through 66 above are incorporated

herein by reference.

108.   At all times relevant hereto, Defendant was engaged in "trade or

commerce" as defined by §501.203(8), Fla. Stat.

109.   A violation of the FDUTPA may be based on "[a]ny law, statute, rule,

regulation, or ordinance which proscribes unfair methods of competition,

or unfair, deceptive, or unconscionable acts or practices."  See

§501.202(3)(c), Fla. Stat.

110.   The provisions of FDUTPA §501.202 (1) AND (2), are to be

profusely understood to promote the following polices:

(1) To simplify, clarify, and modernize the law governing consumer
protection, unfair methods of competition and unconscionable,
deceptive, and unfair trade practices.

(2) To protect the consuming public and legitimate business
enterprises from those who engage in unfair methods of competition,
or unconscionable, deceptive, or unfair acts or practices in the conduct
of any trade or commerce.

111.   Defendant has violated FDUTPA as more particularly described above.

112.   Defendant violated FDUTPA by engaging in unfair and deceptive acts and practices including, but not limited to, failing to honor the Agreement with Plaintiff to have a permanent loan, collecting additional higher monthly payments of over $500, use erroneous elevated balance amount intended to false claim against government insurance, or otherwise feign compliance with the Federal home loan modification program.

113.   Defendant's acts and practices as described herein constitute unlawful, fraudulent, and unfair business acts and practices, in that (a) the justification for Defendant's conduct is outweighed by the gravity of the consequences to Plaintiffs; and/or (b) Defendant's conduct is immoral, unethical, oppressive, unscrupulous, unconscionable, or substantially injurious to Plaintiff; and/or (c) the uniform conduct of Defendant has a tendency to deceive Plaintiff.

114.   Defendant falsely represented that their trial modification plan and modification proposals could prevent foreclosure and falsely represented that borrower is approved and would be granted for loan modifications without paperwork required and solely through the submission of the trial

19

plan payments; additionally fraudulent because the written representations intended to mislead the Plaintiff into believing that they could obtain an opportunity to retain their homes; and unfair because it offends legislative policy with regard to the use of fraudulent, deceptive, misleading, unfair and unconscionable means in the collection of debts.

115.   In particular, Defendant has falsely, deceptively, misleadingly, unfairly, and/or unconscionable advertised to consumers or otherwise induced consumers, including Plaintiff, to make payments that Defendant could not otherwise have collected and which would not otherwise have been collectible, by pretending to offer trial and permanent loan modification programs, without any good faith intention to modify the loan.

116.   Defendant has falsely, deceptively, misleadingly, unfairly, and/or unconscionably advertised or otherwise induced consumers to make payments pursuant to a permanent streamline loan modification by falsely, deceptively, or misleadingly representing that a permanent modification is approved and granted.

117.   The unfair and deceptive acts and practices of Defendant have directly, foreseeably, and proximately caused or will cause damages and injury to Plaintiff.

20

118.   The actions and failures to act of Defendant, and the above described course of fraudulent conduct and fraudulent concealment, constitute acts, uses, or employment by Defendant of unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and the knowing concealment, suppression or omission of material facts with the intent that others rely upon such concealment, suppression, or omission of material facts in connection with the sale and or/leasing of merchandise of Defendant in violation of the consumer protection statutes listed above.

119.   Plaintiff has suffered injury in fact and has lost money or property as a result of the conduct described herein.  Plaintiff was induced by Defendant's unlawful, fraudulent, and unfair conduct to make payments to Defendants totaling thousands of dollars which they would not have made.

120.   As a direct result of Defendant's unfair and deceptive actions and practices, Plaintiff has been damaged.

121.   By reason of the foregoing, Defendant is required to make restitution and disgorge the monies they have unlawfully obtained through their unlawful, fraudulent, and unfair practices.

21

122.   Defendant is obligated to pay (a) actual damages to be proved at trial;

(b) punitive damages; and (c) attorneys' fees and court cost.

123.   Plaintiff lost her property and money investments as a result.  Plaintiff

is entitled to recover damage caused by Defendant's violation.  Plaintiff

is entitled to recover legal cost and fee caused by Defendant's violation.

## COUNT V –WELLS FARGO'S WRONGFUL FORECLOSURE IS A TORTIOUS ACT

124.   The allegations in paragraphs 1 through 66 above are incorporated

herein by reference.

125.  The Defendant's wrongful foreclosure due to Defendant's misconduct

and violation is laid out in Figure 2 below.

# Final Judgment Due To Plaintiff's Violation in Laws & Misconduct



**FIGURE 2**

126.   On or about July 17, 2014, Defendant obtained Foreclosure Judgment.

127.   On or about November 14, 2014, Defendant obtained Foreclosure sale.

128.   On or about January 31, 2015, Defendant obtained Certificate of Title.

129.   Defendant has committed breach of contract fraud by refusing to accept the payment of the permanent loan modification.

130.   Defendant has filed a fraudulent consent judgment to mislead the court and cause the foreclosure of the property.

23

131.   Defendant filed the fraudulent consent judgment without obtaining Plaintiff's assent.

132.   Defendant was aware of consent judgment without Plaintiff's knowledge, consent, and signature as the Plaintiff had motioned to object to the consent judgment without her knowledge, consent, or signature.

133.   Defendant failed to strike the consent judgment and vacate the foreclosure judgment with the knowledge of the invalid consent judgment.

134.   Defendant failed to attempt to strike the consent judgment and attempt to vacate the judgment with the knowledge of the invalid consent judgment.

135.   Defendant obtained property with fraudulent consent judgment violating 18 USC §1343 – Fraud by wire, radio, or television.

136.   Defendant was aware of the permanent streamline loan modification that was in place since September 1, 2013.

137.   Defendant failed to prevent the foreclosure judgment or the foreclosure sale in pursuant to 12 CFR §1024.41(g).

138.   Defendant failed to attempt to prevent the foreclosure judgment or the foreclosure sale in pursuant to 12 CFR §1024.41(g).

24

139.   At all relevant times, Defendant, was fully aware of the contractual relationship between Plaintiff and Defendant set forth by the permanent streamline loan modification document.

140.   As a direct and proximate result of tortious act, Plaintiff has sustained damages of losing her house.

141.   Plaintiff lost her property and money investments as a result.  Plaintiff is entitled to recover damage caused by Defendant's violation.  Plaintiff is entitled to recover legal cost and fee caused by Defendant's violation. The Tortuous act also entitles the Plaintiff for punitive damages.

## COUNT VI – WRONGFUL FORECLOSURE DUE TO LACK OF STANDING

142.   The purported copy of the Note in the complaint for the foreclosure suit does not show assignment to the alleged owner, Federal National Mortgage Association or the alleged servicer, Wells Fargo Bank.

143.   Wells Fargo Bank lacks documents to show its right to enforce the Note, although the complaint states that the Bank "is the holder of the note."

144.   The Note was to the original lender, Mortgage Professionals, Inc.  The alleged Allonge appears not affixed to the Note, although there is sufficient blank space for assignment on the original Note.  The Allonge

not affixed to the instrument cannot be used for valid assignment. §673.2041(1) (1995) Fla. Stat.

145.   There are two indorsements on the Allonge and none of them are dated.  The first is by Christopher Grey with the power of attorney from Mortgage Professionals, Inc. pay to Amtrust Bank and the second is a blank indorsement by Christopher Grey from Amtrust Bank.

146.   No power of attorney from Mortgage Professionals was available to show the authority of the signer of the assignment.

147.   The purported mortgage in the complaint of the foreclosure suit only establishes that MERS is the mortgagee solely as a nominee of the Lender and the Lender is Mortgage Professionals, Inc.  There is no assignment of mortgage to either Federal National Mortgage Association or Wells Fargo Bank to complete the chain of title of the mortgage.

148.   Defendant has insufficient evidence in the form of original Note and Mortgage with proper assignments, acceleration letter, and payment history to prove standing and bring the foreclosure lawsuit forward. 702.015 Fla. Stat.

149.   The Defendant lack of standing to foreclose the property and therefore resort to collusion and signed consent judgment without Plaintiff's knowledge, consent, and signature.

26

150.   Plaintiff lost her property and money investments as a result.  Plaintiff
is entitled to recover damage caused by Defendant's baseless lawsuit.
Plaintiff is entitled to recover legal cost and fee.

## COUNT VII  - VIOLATIONS OF THE COUNSUMER FINANCIAL PROTECTION ACT OF 2010 12 USC 5481 ET SEQ. (CFPA) WITH RESPECT TO LOAN SERVICING

151.   The allegations in paragraphs 1 through 66 above are incorporated
herein by reference.

152.   The loan servicing conduct of the Servicres as described above,
constitutes unfair and deceptive acts or practices in violation of sections
1031(a) and 1036 of the CFPA, 12 USC §§5531(a) and §§5536.

153.   Plaintiff lost her property and money investments as a result.  Plaintiff
is entitled to recover damage caused by Defendant's violation.  Plaintiff
is entitled to recover legal cost and fee caused by Defendant's violation.

## COUNT VIII – VIOLATIONS OF THE COUNSUMER FINANCIAL PROTECTION ACT OF 2010 12 USC 5481 ET SEQ. (CFPA) WITH RESPECT TO FORECLOSURE PROCESSING

154.   The allegations in paragraphs 1 through 66 above are incorporated
herein by reference.

155.   The foreclosure processing conduct of the Servicers as described

above, constitutes unfair and deceptive acts or practices in violation of

sections 1031(a) and 1036 of the CFPA, 12 USC §§5531(a) and §§5536.

156.   Plaintiff lost her property and money investments as a result.  Plaintiff

is entitled to recover damage caused by Defendant's violation.  Plaintiff

is entitled to recover legal cost and fee caused by Defendant's violation.

## COUNT IX – VIOLATIONS OF FEDERAL TRADE COMMISSION:

## FAIR DEBT COLLECTION PRACTICE ACT (FDCPA) 15 U.S.C.

## §§1692 (EXHIBIT G)

157.   The allegations in paragraphs 1 through 66 above are incorporated

herein by reference.

158.   At all times relevant hereto, Defendant is a DEBT COLLECTOR

under 15 USC 1692a.

159.   Defendant has violated FDCPA §807 [15 USC §1692e].

160.   Defendant has violated FDCPA §807 [15 USC §1692e](6)(A).

161.   Defendant has violated FDCPA §807 [15 USC §1692e](8).

162.   Defendant has violated FDCPA §807 [15 USC §1692e](9).

163.   Defendant has violated FDCPA §807 [15 USC §1692e](10).

164.   Defendant has violated FDCPA §807 [15 USC §1692e](11).

165.   Defendant has violated FDCPA §807 [15 USC §1692e](12).

28

166.   Defendant has violated FDCPA §807 [15 USC §1692e](13).

167.   Defendant has violated FDCPA §807 [15 USC §1692e](14).

168.   Defendant has violated FDCPA §808 [15 USC §1692f](1).

169.   Defendant has violated FDCPA §808 [15 USC §1692f](2).

170.   Defendant has violated FDCPA §808 [15 USC §1692f](6)(A).

171.   Defendant has violated FDCPA §809 [15 USC §1692g](a)(1).

172.   Defendant has violated FDCPA §809 [15 USC §1692g](a)(2).

173.   Defendant has violated FDCPA §809 [15 USC §1692g](a)(3).

174.   Defendant has violated FDCPA §809 [15 USC §1692g](a)(4).

175.   Defendant has violated FDCPA §809 [15 USC §1692g](a)(5).

176.   Defendant has violated FDCPA §809 [15 USC §1692g](b).

177.   Defendant has violated FDCPA §809 [15 USC §1692g](c).

178.   Defendant has violated FDCPA §810 [15 USC §1692h].

179.   Defendant has violated FDCPA §812 [15 USC §1692j](a).

180.   Defendant has violated FDCPA §812 [15 USC §1692j](b).

181.   Defendant is liable to Plaintiff in pursuant to FDCPA §813 [15 USC §1692k](a)(1).

182.   Defendant is liable to Plaintiff in pursuant to FDCPA §813 [15 USC §1692k](a)(2)(A).

183.   Defendant is liable to Plaintiff in pursuant to FDCPA §813 [15 USC §1692k](a)(3).

184.   Defendant is liable to Plaintiff in pursuant to FDCPA §813 [15 USC §1692k](b)(1).

185.   Plaintiff lost her property and money investments as a result.  Plaintiff is entitled to recover damage caused by Defendant's violation.  Plaintiff is entitled to recover legal cost and fee caused by Defendant's violation.

## COUNT X – INFLICTION OF EMOTIONAL DISTRESS

186.   The allegations in paragraphs 1 through 66 above are incorporated herein by reference.

187.   Defendant improperly serviced Plaintiff's loans and fraudulently mishandled the loss mitigation procedures by negating a valid loan modification contract and failure to provide information about the status of the modification and abruptly rejected the payment of the loan causing emotional distress and anxiety; defendant's misconduct in court proceeding to prevent Plaintiff to participate in her cause and filed fraudulent consent judgment without her knowledge, consent and signature causes anger, serious emotional distress, and irreparable harm on mental health of the Plaintiff.

188.   Defendants acted intentionally, recklessly, knowingly, and/or negligently in causing Plaintiffs' emotional distress, or Defendants knew or should have known that their actions would result in Plaintiffs suffering serious emotional distress.

189.   Defendants' conduct was extreme and outrageous.

190.   As a direct and proximate result of Defendants' intentional, reckless and/or negligent infliction of emotional distress Plaintiffs have suffered severe humiliation, distress, depression and anxiety.  The loss of their financial well-being, monetary damages, further harm to their credit, and the threatened loss of their homes are the sources of serious emotional distress.

191.   As a result, Defendants are liable to Plaintiffs for actual and punitive damages.

**WHEREFORE,** Plaintiff requests that this Court render judgment on Plaintiff's behalf as follows:

a.   Award actual damages in an amount of $362,000 (Exhibit E) and punitive damage;

b.   An order requiring Defendants to disgorge and make restitution of monies unlawfully obtained from Plaintiff;

31

c. An order enjoining Defendants from continuing their false, deceptive, misleading, unfair and unconscionable practices;

d. Direct Defendants to pay the cost of this proceeding as appropriate;

e. An order awarding Plaintiff's such other and further relief, including additional equitable relief, as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury of all issues so triable as of right.  See Omega v. Deutsche Bank Trust Co., 920 F. Supp. 2d 1298 (S.D. Fla. 2013).

Signed this _____4_____ day of _November_____, 2015.

Karen C. Yeh Ho       Pro Se

1230 Gulfstream Way,

Riviera Beach, FL 33404

# Exhibit A
# Trial Modification Offer: Make 3 trial payments to modify your mortgage…

Case # _____
Karen Yeh Ho
v.
Wells Fargo Bank, N.A.
Exhibit __A__    Page __1/8__



# Make 3 trial payments to modify your mortgage

**KAREN HO**
**9174 CHIANTI CT**
**BOYNTON BEACH, FL  33472**

**July 20, 2013**

Subject: **Wells Fargo Home Mortgage** loan number ending in **7161**

Dear **KAREN HO:**

As a Wells Fargo Home Mortgage customer you matter to us, and we want to help you. Your mortgage is seriously delinquent. Even if you have already received a pre-foreclosure letter, we are offering an easier option that may allow you to stay in your home.

You can stay in your home and modify your mortgage by making *three Trial payments* and then continuing to make those payments on time.* Then we will send you your final modification documents to sign. There is no additional paperwork required to accept this Streamlined Modification.

### This is an option to keep your home
Based on your home's value, you're already approved for the attached Streamlined Modification. In order to take advantage of this option to stay in your home, you will be required to make monthly payments in the amount of **$2,495.10.**

If your first payment is received by **September 1, 2013** and you make the subsequent monthly Trial Period Plan payments by their due dates, you will receive your final modification document to sign.

### Act now to avoid foreclosure

Make 3 trial payments at a lower principal and interest amount and modify your mortgage.

## Call
## 1-800-416-1472

Central Time

Monday through Friday:
6:00 a.m. – 8:00 p.m.

Saturday:
8:00 a.m. – 6:00 p.m.

To accept this offer please call me at the phone number listed below no later than 14 calendar days from the date listed at the top of this letter or send in your first monthly trial period payment instead of your normal monthly mortgage payment. If you do not contact us within 14 days or send in your monthly payment by the due date, you will no longer be eligible for this offer. During the 14 day period the foreclosure sale will not move forward.

### This offer can work alongside other modification options
Even if you are already talking with us about other modification options, we still want you to take advantage of this Streamlined Modification.

---



*0 2 5 7 9 1 7 1 6 1*

Case # _____
Karen Yeh Ho
v.
Wells Fargo Bank, N.A.
Exhibit  A       Page 2/8

Once you start your trial period, we may be able to offer you a mortgage modification with a lower monthly principal and interest payment under a different program including the federal government's Home Affordable Modification Program (HAMP). To see if you qualify, you must submit a complete Borrower Response Package. If you have already submitted your Borrower Response Package, we'll evaluate you for a foreclosure prevention option, including HAMP. In the meantime, you are encouraged to participate in this trial period for a mortgage modification.

**You may choose to leave your home and avoid foreclosure**
If you are unable or do not want to stay in your home, you have two options to avoid foreclosure; a short sale or a mortgage release (also known as a deed in lieu of foreclosure). You may be able to leave your home and still avoid foreclosure, but you must contact us right away.

**Respond by August 3, 2013**
It's important that you call me at **1-800-416-1472**. I am standing by, ready to help you in any way we can. Please understand if I do not hear from you by **August 3, 2013,** foreclosure activities will proceed.

Sincerely,

**James Brigman**
**Home Preservation Specialist**
**877-808-6146 Ext. 46250**
**Wells Fargo Home Mortgage**

*Assuming other eligibility requirements are met.

# Streamlined Modification Trial Period Plan notice

Based on a careful review of your Mortgage account, we are offering you an opportunity to enter into a Trial Period Plan for a mortgage modification. This is the first step toward qualifying for more affordable mortgage payments or more manageable terms. It is important that you read this information in its entirety so that you completely understand the actions you need to take to successfully complete the Trial Period Plan to modify your mortgage.

## Proposed modification terms

If you successfully complete the Trial Period Plan by making the required payments, you will receive a modification with a fixed-interest rate for 40 years from the date the modification is effective. [If we determine that the unpaid balance of your mortgage is more than 115% of the value of your home, you will be eligible to have up to 30% of your principal balance deferred, and the deferred amount will not be subject to any interest rate charges. Moreover, the deferred principal amount will not be due and payable until the earlier of (i) the end of the 40-year term of the modified mortgage, (ii) any sale or transfer of your interest in the property, or (iii) a refinance or payoff of your mortgage loan.]

## Step 1: To stop the foreclosure process (suspension of foreclosure)
In order to delay referring your mortgage to foreclosure, or suspend foreclosure proceedings if your loan has been referred to foreclosure:

- You must contact us at 1-800-416-1472 or in writing at the address provided below no later than **August 3, 2013** to indicate your intent to accept this offer.

- You may also make your first trial period payment by **September 1, 2013,** we will suspend the foreclosure process.

*0 2 5 7 9 1 7 1 6 1*

Case No.
Karen Yeh Ho
v.
Wells Fargo Bank, N.A.
Exhibit ___A___ Page 3/8

However, if you do not respond by **September 1, 2013**, we may continue with the foreclosure process, and a foreclosure sale may occur.

This offer will be revoked if a foreclosure sale occurs, even if the sale occurs prior to the first trial period payment due date set forth below:

## Step 2: To accept this offer
You must make your first trial period payment by the first payment due date designated below. If you fail to make the first trial period payment by the first payment due date and we do not receive the payment by the last day of the month in which it is due, this offer will be revoked and foreclosure proceedings may continue and a foreclosure sale may occur.

*Time is of the essence.*

## Step 3: Make trial period payments
To successfully complete the Trial Period Plan, you must make the Trial Period Plan payments below.

- First payment: **$2,495.10** by **September 1, 2013**

- Second payment: **$2,495.10** by **October 1, 2013**

- Third payment: **$2,495.10** by **November 1, 2013**

Please send your trial period payments to:

Suite L-2-200
1200 West 7th street
Los Angeles, CA 90017

If you have questions about your trial period or final modification requirements, please contact us at 1-800-416-1472.

Please note that your trial period may extend beyond the dates provided. For that reason, continue making your trial period payments in the same amount by the same day of each month you currently make your trial period payments until your home preservation specialist advises that you may move forward with a final modification or that you are no longer eligible for a modification.

Some reasons for the extension could be tied to other liens you have on your property that may be required to be cleared prior to final approval of your modification. For example, we may need to receive a subordination agreement from the other lenders so that we can maintain our lien position; or if you have a judgment placed on your property you may be required to pay off the lien. If you fail to provide a subordination agreement from another lender or fail to pay off a judgment lien as required, your modification may be denied even if you pay the trial period payments. Also, failure to make all trial period payments as outlined above, including if your trial period payments were extended will result in your Trial Period Plan being denied.

## Next Steps
- It is important that you thoroughly review the *frequently asked questions* and additional *Trial Period Plan information and legal notices information* attached.

---

Streamline Modification Trial Letter | Page 3 of 8 | 26947MU 06/13



Case #
Karen Yeh Ho
v.
Wells Fargo Bank, N.A.
Exhibit ___A___    Page 4/8

- Once you have successfully made each of the payments above by their due dates, you have submitted the required signed copies of your modification agreement, and we have signed the modification agreement, your mortgage will be modified in accordance with the terms described in your final modification agreement.

- **We must receive each payment in the month in which it is due. If you miss a payment or do not fulfill any other terms of your trial period, this offer will end and your mortgage loan will not be modified.**

- If you have not been evaluated for eligibility for a modification under the federal Home Affordable Modification Program (HAMP) and you return a complete Borrower Response Package that we previously sent to you no later than **October 1, 2013** we may be able to offer you a HAMP modification with a lower monthly principal and interest payment than we estimate you would receive for the proposed modification described above.

- If you have questions about this information, your trial period payments, or our mortgage modification requirements, please contact us at 1-800-416-1472.

- If you feel that you cannot afford the trial period payments shown above but want to remain in your home, or if you have decided to leave your home, please contact us at 1-800-416-1472 to discuss alternatives to foreclosure.

Please note that except for your monthly mortgage payment amount during the trial period, the terms of your existing note and all mortgage requirements remain in effect and unchanged during the trail period.

## Frequently asked questions

**Q.  What else should I know about this offer?**
- If you make your new payments on time, we will not conduct a foreclosure sale.
- You will not be charged any fees for the three-month trial period plan or for the final Streamlined Modification.
- If your loan is modified, we will waive all unpaid late charges.
- When you become past due on your mortgage payments, it's important to understand that the actions you take to correct the situation can affect your credit score. If you choose a loan modification, your credit score could be negatively impacted during the trial period plan, but it may not be as impacted as an ongoing series of late payments or foreclosure. During the loan modification process, we are required by law to continue to report the delinquency status of your loan to the credit reporting agencies as "paying under a partial or modified payment agreement". When you are approved for a final loan modification, the modification process is complete and is recorded on your credit report as "loan modified" as long as you make your modified payments on time. Keep in mind that the degree of impact to your credit score depends on your overall credit circumstances and is different for each individual. For more information about your credit score and how it might be affected, go to
  **http://www.ftc.gov/bcp/edu/pubs/consumer/credit/cre24.shtm**
- If your monthly payment did not include escrows for taxes and insurance, you are now required to do so.

**Q.  Why is there a trial period?**
The trial period offers you immediate mortgage payment relief (and could help prevent a foreclosure sale) and it gives you time to make sure you can manage the lower monthly payment. Note: the trial period is temporary, and your existing loan and loan requirements remain in effect and unchanged during the trial period. However, once the trial period payments are made you will receive a final

---



Case # _____

Karen Yeh Ho

v.

Wells Fargo Bank, N.A.

Exhibit __A__   Page __5/8__

modification to sign.*

**Q. When will I know if my loan can be modified, and how will the modified loan balance be determined?**
Once you make all of your Trial Period Plan payments on time, we will send you a Loan Modification Agreement that details the terms and conditions of the modified loan. Be sure that you read and understand the new terms and conditions.

**Q. Are there incentives that I may qualify for if I am current with my new payments?**
Borrower incentive compensation is only available to borrowers who qualify for and accept a permanent modification under HAMP. In order to be considered for a HAMP modification, you must return a complete Borrower Response Package no later than **October 1, 2013**. If we determine that you are eligible for a HAMP modification with a lower monthly principal and interest payment than we estimate you would receive for the proposed modification described above, then we will offer you the HAMP modification agreement. At that point if you choose to accept that option, you will be eligible for the borrower incentive compensation under HAMP.

**Q. Will my interest rate and principal and interest payment be fixed after my loan is modified?**
If your loan is modified as described above under the Proposed Streamlined Modification Terms, your interest rate and monthly principal and interest payment will be fixed for the life of your mortgage. Your new monthly payment will include an escrow for property taxes, hazard insurance and other escrowed expenses. If the cost of your homeowners insurance, property tax assessment or other escrowed expenses increases, your monthly payment will increase as well. Please note, if we are able to offer you another modification program (based on proper return of a completed Borrower Response Package — see question above), then your interest rate may change based on the terms and conditions, as described in the modification agreement.

* Other eligibility requirements may apply.

# Additional Trial Period Plan information and legal notices

**We will not proceed to foreclosure sale during the trial period, provided you are complying with the terms of the Trial Period Plan:**
- Any pending foreclosure action or proceeding that has been suspended may be resumed if you fail to comply with the terms of the plan or do not qualify for a final modification.
- You agree that we will hold the trial period payments in an account until sufficient funds are in the account to pay your oldest delinquent monthly payment. You also agree that we will not pay you interest on the amounts held in the account. If any money is left in this account at the end of the Trial Period Plan and you qualify for a loan modification, those funds will be deducted from amounts that would otherwise be added to your modified principal balance.
- Our acceptance and posting of your payment during the trial period will not be deemed a waiver of the acceleration of your loan (or foreclosure actions) and related activities, and shall not constitute a cure of your default under your loan unless such payments are sufficient to completely cure your entire default under your loan.

**If your monthly payment did not include escrows for taxes and insurance, you are now required to do so:**
You agree that any prior waiver that allowed you to pay directly for taxes and insurance is revoked. You agree to establish an escrow account and to pay required escrows into that account.



Case #

Karen Yeh Ho

v.

Wells Fargo Bank, N.A.

Exhibit ___A___ Page *6/8*

**Your current loan documents remain in effect; however, you may make the trial period payment instead of the payment required under you loan documents:**
You agree that all terms and provisions of your current mortgage note and mortgage security instrument remain in full force and effect and you will comply with those terms; and that nothing in the Trial Period Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents.

*0 2 5 7 9 1 7 1 6 1 *

Karen Yeh Ho

v.

Wells Fargo Bank, N.A.

Exhibit _____A_____ Page _7/8_

### Active Servicemembers

The Servicemembers Civil Relief Act (SCRA) may offer protection of relief to members of the military who have been called to active duty. If either you have been called to active duty, or you are the spouse or financial dependent of a person who has been called to active duty, and you haven't yet made us aware of your status, please contact our Military Customer Service Center at **1-866-936-SCRA (1-866-936-7272)** or fax your Active Duty Orders to **1-877-658-4585**, attention Special Loans/SCRA.

### Get free counseling to help manage expenses and avoid foreclosure

Reach out to a local HUD-approved, non-profit housing counseling agency if you're struggling to keep up with the monthly expenses, or want help to avoid foreclosure. At no cost, a counselor will work closely with you, providing the information and assistance you need. To find an agency near you go to **www.hud.gov/offices/hsg/sfh/hcc/fc**. Or call **1-800-569-4287**. You can also call the HOPE Hotline at **1-888-995-HOPE**.

Be sure you avoid anyone who asks for a fee for counseling or a loan modification, or asks you to sign over the deed to your home, or to make your mortgage payments to anyone other than Wells Fargo.

### What you need to know about foreclosure

We will continue to work with you to help you avoid a foreclosure sale. However, please understand that the foreclosure process could begin at any time. If your mortgage has already been referred to foreclosure, that process will continue to move forward. Also, as part of the foreclosure process, you may receive notices from a third-party attorney delivered by mail, or see steps being taken to proceed with a foreclosure sale of your home.

### Beware of foreclosure scams – tips and warning signs

Scam artists are taking advantage of distressed homeowners by promising immediate relief from foreclosure or demanding cash for counseling services when HUD-approved counseling agencies provide the same services for free. If you receive an offer, information or advice that sounds too good to be true, it probably is. Don't let them take advantage of you, your situation, your home or your money. Remember, help is free.

### How to spot a scam – beware of a company or person who:

- Asks for a fee in advance to work with your lender to modify, refinance or reinstate your mortgage.
- Guarantees they can stop a foreclosure or get your loan modified.
- Advises you to stop paying your mortgage company and pay them instead.
- Pressures you to sign over the deed to your home or sign any paperwork that you haven't had a change to read, and you don't fully understand.
- Claims to offer "government approved" or "official government" loan modifications.
- Asks you to release personal financial information online or over the phone and you have not been working with this person and/or do not know him or her.

### How to report a scam – do one of the following:

- Go to **www.preventloanscams.org** and fill out a Loan Modification Scam Prevention Network's (LMSPN) complaint form online and get more information on how to fight back. Note: You can also fill out this form and sent it to the fax number/email/address (your choice) on the back of the form.
- Call **1-888-995HOPE (7673)** and tell the counselor about your situation and that you believe you were scammed of know of a scam

### Disclosures, terms and conditions

This information is accurate as of date of printing and is subject to change without notice. Esta información es precisa a la fecha de impresión y está sujeta a cambios sin previo aviso.

Por favor, tenga en cuenta que el resto de la correspondencia, documentos legales y notas aclaratorias le serán suministrados en inglés. Le recomendamos que obtenga los servicios de un intérprete independienta para que le ayude según necesidades.

*  0 2 5 7 9 1 7 1 6 1  *

Case #
Karen Yeh Ho

v.

Wells Fargo Bank, N.A.

Exhibit ___A___   Page _8/8_

Wells Fargo Bank, N.A. is required by the Fair Debt Collection Practices Act to inform you that if your loan is currently delinquent or in default, as your loan servicer, we will be attempting to collect a debt, and any information obtained will be used for that purpose. However, if you have received a bankruptcy discharge, and the loan was not reaffirmed in the bankruptcy case, Wells Fargo Bank, N.A. will only exercise its rights against the property and is not attempting any act to collect the discharged debt from you personally.

We are required by the Fair Credit Reporting Act (FCRA) to accurately report the status of your loan to the credit reporting agencies. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

With respect to those loans located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

**Wells Fargo Home Mortgage** is a division of Wells Fargo Bank N.A. ©2013 Wells Fargo Bank N.A. All rights reserved. NMLSR ID 399801



Streamline Modification Trial Letter               Page 8 of 8                               26947MU 06/13

# <u>Exhibit B</u>
# Permanent Streamline Loan Modification Agreement



Case # _____

Karen Yeh Ho

v.

Wells Fargo Bank, N.A.

Exhibit __B__  Page __1/13__

This Document Prepared By:
**JASON FILIPIAK**
**WELLS FARGO BANK, N.A.**
**3476 STATEVIEW BLVD, MAC# X7801-03K**
**FORT MILL, SC 29715**
**(800) 416-1472**

When Recorded Mail To:
**FIRST AMERICAN TITLE**
**ATTN: LMTS**
**P.O. BOX 27670**
**SANTA ANA, CA  92799-7670**

Tax/Parcel No. 08424513220000910
_____ [Space Above This Line for Recording Data] _____

| | |
|---|---|
| Original Principal Amount: $318,400.00 | Prev. Rec. Mod. Loan Amt: $0.00 |
| Unpaid Principal Amount: $304,044.08 | Fannie Mae Loan No.: |
| New Principal Amount $378,854.51 | Loan No: (scan barcode) |
| New Money (Cap): $74,810.43 | |

# LOAN MODIFICATION AGREEMENT (MORTGAGE)
### (Providing for FIXED Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 25TH day of NOVEMBER, 2013, between **KAREN YEH HO AND WING KEI HO, WIFE AND HUSBAND** ("Borrower") whose address is **8038 TANGELO DR, BOYNTON BEACH, FLORIDA 33436** and **WELLS FARGO BANK, N.A.** ("Lender"), whose address is **3476 STATEVIEW BLVD, MAC# X7801-03K, FORT MILL, SC 29715,** amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated **NOVEMBER 30, 2007** and recorded on **DECEMBER 6, 2007** in **INSTRUMENT NO. 20070548973  BOOK 22301  PAGE 1321,** of the **OFFICIAL** Records of **PALM BEACH COUNTY, FLORIDA,** and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

**8038 TANGELO DR, BOYNTON BEACH, FLORIDA 33436**
(Property Address)

Case # _____

Karen Yeh Ho

v.

Wells Fargo Bank, N.A.

Exhibit ___B___   Page _2/13_

COPY

the real property described being set forth as follows:

**LOT 91, OF KNOLLWOOD P.U.D., ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 107,**
**AT PAGE(S) 55 THROUGH 58, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA**

**TAX/PARCEL NO. 08424513220000910**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of, **DECEMBER 1, 2013**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$378,854.51**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal at the yearly rate of **4.0000%** from **DECEMBER 1, 2013**, and Borrower promises to pay monthly payments of principal and interest in the amount of U.S. **$1,583.38** beginning on the **1ST** day of **JANUARY, 2014**. Borrower will continue to make monthly payments on the same day of each succeeding month until principal and interest are paid in full. If Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.. The new Maturity Date will be **DECEMBER 1, 2053**.

| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|--------|---------------|---------------------------|----------------------------------------|-------------------------------|-----------------------|-------------------|----------------------------|
| 1–480 | 4.0000% | 12/01/2013 | $1,583.38 | $916.60 Adjusts annually after year 1 | $2,499.98 Adjusts annually | 01/01/2014 | 480 |

If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

1.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

Case # _____
Karen Yeh Ho
v.
Wells Fargo Bank, N.A.
Exhibit ___B___ Page 3/13



2. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

3. Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f) If included, the undersigned Borrower(s) acknowledges receipt and acceptance of the Notice of Special Flood Hazard disclosure.

Case # _____
Karen Yeh Ho
v.
Wells Fargo Bank, N.A.
Exhibit ___B___ Page 4/13

(g)  If the security property is an investment property or 2-4 unit principal residence: Borrower hereby absolutely and unconditionally assigns and transfers to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon this assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold estate.

Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default under this Agreement, pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9 of the Security Instrument.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

4.  **Pursuant to Section 199.145(4)(b), Florida Statutes, additional nonrecurring intangible tax is due. This Mortgage is given in connection with the refinancing of an obligation secured by an**

Wells Fargo Custom FNMA Loan Modification Agreement 10042013_71

First American Mortgage Services                                          Page 4

936

Case # _____
Karen Yeh Ho
v.
Wells Fargo Bank, N.A.
Exhibit ___B___ Page 5/13

existing mortgage, recorded in Official Records INSTRUMENT NO. 20070548973   BOOK
22301   PAGE 1321, Public Records of PALM BEACH COUNTY, Florida from the Mortgagor
hereunder to the Mortgagee hereunder, or to the assignor of the Mortgagee hereunder. As of the
date of refinancing, the unpaid principal balance of the original obligation, plus accrued but
unpaid interest, secured by the existing mortgage is equal to U.S. $304,044.08. The principal
balance of the new obligation secured by this Mortgage is U.S. $378,854.51, which amount
represents, as of the refinancing, the excess of the unpaid principal balance of the original
obligation, plus accrued but unpaid interest. Notwithstanding anything to the contrary
contained in the foregoing, if the obligor under the new obligation is not liable to the obligee
under the obligation secured by this Mortgage, then the additional nonrecurring intangible tax
shall be computed on the entire principal balance of the new obligation.

Case # _____
Karen Yeh Ho
v.
Wells Fargo Bank, N.A.
Exhibit ___B___ Page 6 /13

In Witness Whereof, the Lender have executed this Agreement.

**WELLS FARGO BANK, N.A.**

By _____     _____     _____
                                 (print name)                                    Date
                                 (title)

_____ [Space Below This Line for Acknowledgments] _____

LENDER ACKNOWLEDGMENT

STATE OF _____     COUNTY OF _____

The  instrument  was  acknowledged  before  me  this  _____, by

_____     the

_____ of  WELLS  FARGO  BANK,  N.A.,

a_____, on behalf of said corporation.

_____
Notary Public

Printed Name: _____

My commission expires: _____

**THIS DOCUMENT WAS PREPARED BY:**
**JASON FILIPIAK**
**WELLS FARGO BANK, N.A.**
**3476 STATEVIEW BLVD, MAC# X7801-03K**
**FORT MILL, SC 29715**

Case # _____
Karen Yeh Ho
v.
Wells Fargo Bank, N.A.
Exhibit __B__ Page 7/13

In Witness Whereof, I have executed this Agreement.

Borrower: **KAREN YEH HO**                              Date: 12/4/2013

Borrower: **WING KEI HO**                              Date: _____

Borrower: _____              Date: _____

Borrower: _____              Date: _____

_____ [Space Below This Line for Acknowledgments] _____

### BORROWER ACKNOWLEDGMENT

STATE OF ___Flarida___
COUNTY OF ___PalmBeach___

The foregoing instrument was acknowledged before me this ___December 4/2013___ by
**KAREN YEH HO, WING KEI HO** who is personally known to me or who has produced
___Driver License___ as identification

Notary Public

Print Name: ___Scott Billiel___

My commission expires:

_____

Commission # _____

SCOTT BILLET
MY COMMISSION # FF 008947
EXPIRES: August 16, 2017
Bonded Thru Notary Public Underwriters

Case # _____
Karen Yeh Ho
v.
Wells Fargo Bank, N.A.
Exhibit ___B___ Page _8/13_

C O P Y

Date: **NOVEMBER 25, 2013**
Loan Number: (scan barcode)
Lender: **WELLS FARGO BANK, N.A.**

Borrower: **KAREN YEH HO, WING KEI HO**

Property Address: **8038 TANGELO DR, BOYNTON BEACH, FLORIDA 33436**

## NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____    12/4/2013
Borrower                                                                  Date
**KAREN YEH HO**

_____    _____
Borrower                                                                  Date
**WING KEI HO**

_____    _____
Borrower                                                                  Date

_____    _____
Borrower                                                                  Date

_____    _____
Borrower                                                                  Date

_____    _____
Borrower                                                                  Date

10042013_71                                          Page 8        936
First American Mortgage Services

Case # _____
Karen Yeh Ho
v.
Wells Fargo Bank, N.A.
Exhibit __B__ Page 9/13

"COPY"

Date: **NOVEMBER 25, 2013**
Loan Number: (scan barcode)
Lender: **WELLS FARGO BANK, N.A.**

Borrower: **KAREN YEH HO, WING KEI HO**

Property Address: **8038 TANGELO DR, BOYNTON BEACH, FLORIDA 33436**

## ERRORS AND OMISSIONS COMPLIANCE AGREEMENT

In consideration of **WELLS FARGO BANK, N.A.**

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity. including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender. Borrower agrees to assume all costs that may be incurred by the Lender, including without limitation, actual expenses, legal fees and marketing losses, as a result of the Borrower's failure to comply with all such requests within such 30 day time period.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

_____          12/4/2013
**KAREN YEH HO**                                                    Date

_____          _____
**WING KEI HO**                                                         Date

_____          _____
                                                                              Date

_____          _____
                                                                              Date

_____          _____
                                                                              Date

_____          _____
                                                                              Date

10042013_71                                                                936
First American Mortgage Services              Page 9

Case # _____
Karen Yeh Ho
v.
Wells Fargo Bank, N.A.
Exhibit ___B___   Page 10/13



- There must be 2 sets of documents provided to be completed and notarized.  Each set also includes the Loan Modification Agreement.  The mortgagor(s) must sign the Loan Modification Agreement along with the Compliance Agreement (if enclosed).

- If the Affidavit under Section 255 of the New York State Law is enclosed, do not complete.  This will be completed by Wells Fargo Home Mortgage upon receipt of the modification documents.

- If the Florida Affidavit of Continuous Marriage is enclosed, single persons are not required to sign.  All married persons must sign as required.  If mortgagors are married, this Affidavit must be signed and dated by both the mortgagors and must be notarized by the Notary.

- With the exception of the two noted above, all other enclosed affidavits must be completed as required, if enclosed.

- Return notarized modification documents to Wells Fargo Home Mortgage in the pre-paid envelope provided to the mortgagor(s).  Please return required documents by the date noted on the coversheet.

In order for the loan modification to be finalized, all items listed above must be completed exactly as required.  If not, modification documents will be returned for completion, potentially resulting in a delay in closing.

Case # _____

Karen Yeh Ho

v.

Wells Fargo Bank, N.A.

Exhibit _B_____ Page _11/13_

**WELLS FARGO HOME MORTGAGE**

# Preferred Payment Plan<sup>SM</sup> Authorization Form

*Match your mortgage payments to your payday cycle*

~~COPY~~

As part of your loan modification, please complete this form. Managing your mortgage payments is easy when you enroll in the *Preferred Payment Plan*. Simply choose the option below that matches your personal payday cycle, and your monthly payments will be withdrawn automatically from your checking or savings[1] account. The *Preferred Payment Plan* is free, secure and more convenient than writing checks and mailing payments.

Please note: Enrolling in the *Preferred Payment Plan* does not change the principal and interest payment arrangement specified in your mortgage loan documents. Withdrawn funds may be applied to your mortgage when sufficient funds have accumulated to make a full monthly payment as outlined in your mortgage note.

**To enroll in the *Preferred Payment Plan*, follow the steps below and fax this signed form to 1-866-287-6241.**

1. Select the *Preferred Payment Plan* option that matches your pay schedule

Please check the appropriate box to mark your choice. If this form is signed but no option is selected, you will be set up for monthly withdrawals on your due date.

*If you choose either the Weekly or Bi-weekly option, withdrawals in addition to the amount needed to cover your monthly mortgage payments will naturally occur 2 to 5 times per year. The additional withdrawn funds will be automatically applied to your principal balance – helping you pay off your mortgage faster.*

☑ **Weekly:** One-quarter of your monthly payment will be withdrawn every week, including principal, interest, applicable tax and insurance payments. In a year's time, 52 withdrawals will be made.
**Request a withdrawal start date** *(must be Monday-Friday and 4 weeks prior to due date):* __1__ / __1__ / __2014__

☐ **Bi-weekly (every other week):** Half of your monthly payment amount will be withdrawn every other week, including principal, interest, applicable tax and insurance payments. In a year's time, 26 withdrawals will be made.
**Request a withdrawal start date** *(must be Monday-Friday and 3 weeks prior to due date):* _____ / _____ / _____

☐ **Semi-monthly (twice a month):** Half of your monthly payment will be withdrawn on the 15th of the month prior to the due date, and the second half of your monthly payment will be withdrawn on the 1st of month in which payment is due. Each withdrawal will equal one-half of the total monthly payment due, including principal, interest, applicable tax and insurance payments. In a year's time, 24 withdrawals will be made.

☐ **Monthly:** Your monthly payment amount will be withdrawn on your due date (usually the 1st day of every month) or up to 4 days after your due date. The withdrawal amount will equal the total monthly payment due, including principal, interest, applicable tax and insurance payments.
**Please select day for withdrawal:** ☐ Due Date ☐ 1 day after ☐ 2 days after ☐ 3 days after ☐ 4 days after

**2. Specify additional principal, if any**
You can choose to add an additional amount to each of your electronic withdrawals to be applied to your outstanding loan principal.

☐ Yes, please add $_____ to each of my automatic electronic withdrawals.

**3. Supply your account information** (Do not include a voided check)

Account type: ☑ Checking   ☐ Savings[1]

Customer Bank Routing Number: _063107513_       Customer Bank Account Number: ███████████
(9-digit number at the bottom left of your check)      (To the right of the Bank Routing Number on your check)

**4. Signature**
By signing below, I agree to the Terms and Conditions on the following page and online at wellsfargo.com/preferredterms.

Mortgage Loan Number: _936-0259717161_       Date Signed: _12/4/2013_

Customer Name: _Karen Yeh Ho_       Customer Signature: _Karen Yeh Ho_

Case # _____

Karen Yeh Ho

v.

Wells Fargo Bank, N.A.

*Preferred Payment Plan* Terms and Conditions      Exhibit  B      Page 12/13      [COPY]

- I authorize Wells Fargo, its authorized representatives and service providers to initiate electronic withdrawals from my designated account to make monthly payments on my mortgage.

- I understand that I will receive confirmation specifying the date the electronic withdrawals will begin. I understand that I will continue to make my payment until I receive this confirmation and electronic withdrawals begin.

- I understand that this authorization and the program services in no way alter or lessen my obligation under my existing mortgage contract regarding the amount of monthly payments, when payments are due, the applications of payments, the assessment of late charges or the determination of delinquencies. I must maintain sufficent funds in my account for withdrawal of my monthly payment.

- I understand that withdrawn funds may not be applied to my mortgage until sufficent funds have accumulated for a full monthly payment to be made.

- I understand the electronic withdrawal amount will vary with changes in escrow or principal and interest components, if applicable.

- I understand that I must provide Wells Fargo notice of at least 10 days for any requests to modify, change or terminate participation in this program. I understand that if I modify, change, or terminate participation in the program, I may not realize the benefits.

- I agree to be bound by the program's Terms and Conditions, which are stated here and online.

**For questions about your enrollment, please retain this form and call 1-866-386-8519, using authorization code AMPTAC.**

1. Excess Activity Fees may apply if you exceed these federally-mandated transaction limits for savings accounts:
- Three withdrawals in a month by check, draft, point-of-sale purchase, check card, or other similar withdrawal payable to a third party
- A total of six transfers and/or withdrawals in a month including: those listed above, preauthorized or automatic transfers (including overdraft protection transfers and payment to third parties), and transfers made online or by telephone

For more information, please refer to your account agreement with your financial institution. Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2013 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

Doc ID 14383 01/13

HMG5218

Case # _____
Karen Yeh Ho
v.
Wells Fargo Bank, N.A.
Exhibit ___B___ Page 13/13



*Wells Fargo Home Mortgage has retained the services of First American Title Services and their network of Notary Public's for the purpose of further providing excellent service and care for our customers. A Notary will contact you shortly to set up an appointment to meet with you. This process will assist you in having your modification documents correctly signed, notarized, and returned to Wells Fargo Home Mortgage in a timely fashion in order to complete your request.*

*Please take advantage of this FREE service to you. Please be advised, First American Title Services has no information concerning your loan modification nor will they be able to answer any questions concerning the modification. They are not a collection agency and are in no way attempting to collect on any debt you may have. They are merely delivering the documents, providing a free Notary service and then returning the documents to us for you. The documents enclosed are going to explain the terms of your modification, including your new payment amount and your next payment due date. These documents are for your information only. The Notary will bring additional documents for you to review and sign.*



STATE OF FLORIDA - PALM BEACH COUNTY
I hereby certify that the foregoing is a true copy of the record in my office with redactions, if any, as required by law.
THIS 15TH DAY OF October, 2015
SHARON R. BOCK
CLERK & COMPTROLLER
By _____
DEPUTY CLERK

<u>**Exhibit C**</u>
**Response to Inquiry on December 3, 2014**
**Regarding Account Number 027917161**

Wells Fargo
P.O. Box 10335
Des Moines, IA 50306-0335

Case # _____
Karen Yeh Ho
v.
Wells Fargo Bank, N.A.
Exhibit ___C___ Page _1/3_

December 17, 2014

Karen Yeh Ho
8038 Tangelo Drive
Boynton Beach, FL 33436

Subject:     Response to the inquiry received on December 03, 2014, regarding account
             number 0257917161

Dear Mrs. Karen Yeh Ho:

Thank you for the opportunity to address your concern. We've carefully considered what we can
do and are providing our response.

**In your inquiry, the following items were addressed:**

- Clarification on workout review activity
- Foreclosure process
- Rescind foreclosure

Please find our responses to the concerns raised in your inquiry addressed below.

**Clarification on workout review activity**

We're the servicer of your account. As the servicer, we collect payments, pay escrow items such
as taxes and insurance, answer questions and provide payoff information, workout
opportunities, home preservation, as well as other duties on behalf of the investor over the life of
your account.

Wells Fargo Bank, N.A. is the servicer of your account for owner/assignee Fannie Mae. A contact
address for the owner/assignee is:

> Fannie Mae
> 3900 Wisconsin Avenue NW
> Washington, DC 20016

We initiated a review for workout options on July 18, 2013. On July 19, 2013, we were able to
approve you for a trial payment plan, to begin on September 01, 2013. The third payment due
under the plan was received on October 30, 2013.

Upon successful completion of the trial payment plan, a modification agreement was approved.
On November 26, 2013, we sent the original packet with the terms of the modification to First
American Notary and a copy of the modification packet to you.

The original modification packet was sent to the notary who was to contact you to set up a time
to sign the modification documents. The loan modification copy sent to your attention included
instructions that a notary would be in contact with you to sign the original modification
documents.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801

Yeh Ho
December 17, 2014
Page 2

Case
Karen Yeh Ho
v.
Wells Fargo Bank, N.A.
Exhibit ___C___ Page _2/3_

From November 27, 2013, through December 06, 2013, we attempted to contact you via telephone to see if you had been contacted by First American Notary service to establish a time to sign the modification documents.

On December 06, 2013, we received the signed agreement from you. However, upon review of the signed agreement, we found that Wing Kei Ho did not sign and the agreement was stamped "copy". As a result, the signed agreement was not accepted.

From December 09, 2013, through December 31, 2013, we attempted multiple times to contact you via telephone to inform you that the following items were needed to complete the loan modification:

- We received a Quit Claim Deed but also needed a divorce decree
- Signed redrafted modification documents or original modification documents signed by both you and Wing Kei ho
- Your marital status

We're unable to complete a modification for your account as you did not return the original signed modification documents. As a result, your account was removed from this review on January 13, 2014.

A new review for workout options was initiated for your account on March 17, 2014. To review your account for possible workout options such as a repayment plan, modification, short sale, or a deed in lieu of foreclosure, we need to determine your ability to repay the account. To determine your ability to pay, we need to receive your most current financial information. We're unable to complete the review if we are missing documentation, so we may request updated financial information.

We're unable to complete this review as you did not provide us with updated financial information. As a result, your account was removed from consideration on May 21, 2014.

Another review for available workout options was initiated for your account on August 07, 2014. However, we're unable to complete this review as we didn't receive a response from you. As a result, the account was removed from review on September 16, 2014.

**Foreclosure process**

We initiated foreclosure action on the account on December 06, 2011, at which time your account was due for the August 2011 through December 2011 payments. The terms of the Note and Mortgage outline the conditions under which we can accelerate the collection of the debt. As these conditions were met, our foreclosure action is valid.

The foreclosure was judicial; as such, there was no way to expedite the foreclosure process. The judge has to grant all motions and confirm the sale.

Yeh Ho
December 17, 2014
Page 3

Karen Yeh Ho
v.
Wells Fargo Bank, N.A.
Exhibit ___C___ Page 3/3

In your correspondence, you express concerns about "robo-signing". We're aware of concerns about accuracy in the foreclosure affidavit process, and the concerns were addressed in the Consent Order entered into between Wells Fargo and the Office of the Comptroller of the Currency.

**Rescind foreclosure**

On September 12, 2014, we reviewed the account and were unable to approve payment assistance options prior to the foreclosure sale because due to no response from you. We're unable to rescind the foreclosure sale, because the account didn't qualify for payment assistance options.

**Going forward**

If you have any questions about the information in this letter, please contact me directly at 1-800-853-8516, extension 45484. I am available to assist you Monday through Friday, 8:00 a.m. to 5:00 p.m. Central Time. If you require immediate assistance and I am unavailable, other representatives are available to assist you at 1-800-853-8516, Monday through Friday, 7:00 a.m. to 7:00 p.m. Central Time.

Sincerely,

*Lisa Ullerich*

Lisa Ullerich
Executive Mortgage Specialist
Customer Care and Recovery Group

Cc.   Consumer Financial Protection Bureau
        Case number: 141125-001469

EX003/FLY/co1227153/ge3034060/cl936

# Exhibit D
# Fraudulent Consent Judgment Without Plaintiff's Consent or Signature

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
CIVIL ACTION

WELLS FARGO BANK, NA,
    Plaintiff,

vs.

                              CASE NO.: 50-2012-CA-002992
                              DIVISION: AW
KAREN YEH HO , et al,
    Defendant(s).

_____/

## DEFENDANT(S), KAREN YEH HO AND WING KEI HO SERVED AS LOUIE  NG CONSENT TO FINAL JUDGMENT OF MORTGAGE FORECLOSURE

Defendant(s), KAREN YEH HO AND WING KEI HO SERVED AS LOUIE  NG, hereby consent to Final Judgment of Mortgage Foreclosure and agree as follows:

1.      PLAINTIFF owns and holds the Note and Mortgage and related security instruments (the "Loan Documents") which are the subject of this action. Defendant(s) are in default under the terms of the Loan Documents, and Plaintiff has fulfilled all conditions precedent to obtaining the relief sought herein. Any interest of Defendant(s) in the real and personal property (the "Property") which is the subject of this action is subordinate and inferior to Plaintiff's interest.

2.      Defendant(s) hereby withdraw any affirmative defenses and/or counter-claims, if any, raised in their answer(s) and acknowledge that they have no defenses to the allegations set forth in Plaintiff's Complaint and admit the validity of these allegations.

3.      Defendant(s) acknowledge the validity of their debt to Plaintiff under its Loan Documents (the "Loan Amount") as set forth in Plaintiff's Complaint.

4.      Defendant(s) consent to the entry of a final judgment of foreclosure and hereby waive any rights they may have, or later acquire, to object to the foreclosure sale or to otherwise impede or delay the issuance of the Certificate of Title in favor of the purchaser at the sale.

FILE_NUMBER: F11042245                Serial: 26586372
                                    DOC_ID: M002402



Case # _____

Karen Yeh Ho

v.

Wells Fargo Bank, N.A.

Exhibit   D   Page 1/4

5.    Plaintiff may continue its foreclosure action and may immediately apply to the court for entry of a final judgment without the necessity of a hearing.

6.    This Consent to Final Judgment Agreement may be signed in counterparts and each copy thereof shall be construed as an original document.

7.    Plaintiff agrees not to seek a foreclosure sale date for less than one hundred and twenty (120) days upon entry of the Final Judgment in exchange for his/her/their Consent.

IN WITNESS WHEREOF, the parties have executed this agreement on the date set forth below:

Ronald R Wolfe & Associates, P.L.
4919 Memorial Highway, Suite 200
Tampa, Florida  33634

IN C/O JEFFREY HARRINGTON
100 SOUTH OLIVE AVENUE
WEST PALM BEACH, FL 33401

BY: _____
Elizabeth A. Wulff
ATTORNEY FOR PLAINTIFF

BY: _____ Millie Oneo, Esq.
JEFFREY HARRINGTON ATTORNEY
FOR KAREN YEH HO AND WING
KEI HO SERVED AS LOUIE   NG
DEFENDANT

DATED: _____

DATED: ___7/17/14___

I HEREBY CERTIFY that a copy of the foregoing has been furnished to all parties on the attached service list this ___17th___ day of ___July___, 2014.

Ronald R Wolfe & Associates, P.L.
P.O. Box 25018
Tampa, Florida  33622-5018
(813)  251-4766
(813)  251-1541 Fax

By: _____
Elizabeth A. Wulff
FLORIDA BAR NO. 12219
Rafael J. Solernou
FLORIDA BAR NO. 0086579

F11042245

Case # _____
Karen Yeh Ho
v.
Wells Fargo Bank, N.A.
Exhibit ___D___   Page ___1/4___

**Service List**

KAREN YEH HO
c/o JEFFREY HARRINGTON, Esq.
HARRINGTON LAW ASSOCIATES, PLLC
100 SOUTH OLIVE AVENUE
WEST PALM BEACH, FL  33401
service@myhlaw.com

WING KEI HO SERVED AS LOUIE   NG
c/o JEFFREY HARRINGTON, Esq.
HARRINGTON LAW ASSOCIATES, PLLC
100 SOUTH OLIVE AVENUE
WEST PALM BEACH, FL  33401
service@myhlaw.com

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED, AS NOMINEE FOR NYCB
MORTGAGE COMPANY, LLC
c/o Ariane Wolinsky, Esq.
Kahane & Associates, P.A.
8201 Peters Road, Suite 3000
Plantation, FL  33324
notice@kahaneandassociates.com
notice@kahaneandassociates.com

KNOLLWOOD HOMEOWNERS' ASSOCIATION, INC.
c/o Carol A. Strauss, Esq.
Bakalar & Associates, P.A.
150 South Pine Island Road, Suite 540
Plantation, FL  33324
Strauss-Litigation@Assoc-Law.com

TENANT #1 SERVED AS JAMAN BRUNDAGE
8038 TANGELO DRIVE
BOYNTON BEACH, FL  33436-1602

TENANT #2 SERVED AS WARREN CLAY
8038 TANGELO DRIVE
BOYNTON BEACH, FL  33436-1602

Case Number: 50-2012-CA-002992

Case # _____
Karen Yeh Ho
v.
Wells Fargo Bank, N.A.
Exhibit ___D___  Page _3/4_

**Package Serial**

**26586370**

**Doc Serial**

**26586371**

**Doc Name: Consent to FSJ**

This package must be scanned into E_FILE

This package must be scanned into E_SERVICE

Case # _____

Karen Yeh Ho

v.                                      )

Wells Fargo Bank, N.A.

Exhibit _D_ Page 4/4



STATE OF FLORIDA • PALM BEACH COUNTY

I hereby certify that the foregoing is a
true copy of the record in my office with
redactions, if any, as required by law.

THIS 15TH DAY OF October 20 15

SHARON R. BOCK
CLERK & COMPTROLLER

By _____
DEPUTY CLERK



# <u>Exhibit E</u>
# Tort: Cash Paid Into The House & Legal Fees and Court Cost

## TORT as of 11/14/2014

| Item no. | | round to the nearest dollar dollar amount |
|---|---|---|
| | cash paid into the house and opportunity cost | |
| 1 | Downpayment 20% of purchase price | $79,600 |
| 2 | Closing cost 3% of purchase price | $11,940 |
| 3 | Payment of Principal and interest should be 2.75% but was charged 6.876% without adj to lower rate | $129,800 |
| 4 | Real Estate taxes year 2007 to year 2014 | $43,051 |
| 5 | Homeowner Association fee  96 months | $18,240 |
| 6 | Homeowner Insurances paid eight years: year 2007 to year 2015 | $8,200 |
| | Home improvements: | |
| 7 | wood floor | $1,378 |
| 8 | refrigerator, washer, dryer, dishwasher, stove, microwave | $6,095 |
| 9 | window dressing, curtain blinds | $636 |
| 10 | fences around the house | $2,650 |
| 11 | brick patio | $3,180 |
| 12 | maintenace of the house AC repairs | $2,968 |
| 13 | Permanent loan modification payments $2495.10/month for 5 months | $12,476 |
| | Sub Total | $320,214 |
| 14 | Opportunity cost of additional rental income @2,500/month 11/2014 - 10/2015 | $30,000 |
| | | |
| | Total | $350,214 |
| | Legal fees and court cost | |
| 1 | Ice legal | $6,450 |
| 2 | Harrington Law | $3,300 |
| 3 | Attend hearing parking, copy and mailing | $655 |
| 4 | When Karen attend hearing must hire a nanny for her Mom @80/day for 20 | $1,600 |
| | | |
| | Total | $12,005 |
| | **GRAND TOTAL** | **$362,219** |

Case #
Karen Yeh Ho
v.
Wells Fargo Bank, N.A.
Exhibit __F__   Page __1/1__

# <u>Exhibit F</u>
# 12 CFR §1024.41 Loss Mitigation Procedure

| CFPB Mortgage Servicing Rules | RESPA/TILA | National Mortgage Settlement | Section |
|---|---|---|---|
| **Stopping the foreclosure process or sale after the loan has been referred to foreclosure** | | | |
| If the borrower submits a complete loss mitigation application after the loan is put in foreclosure, but more than 37 days before a sale, the servicer must not seek a foreclosure judgment or order of sale, or conduct a foreclosure sale while the application is under review. Same exceptions as out immediately above apply. The servicer must stop the foreclosure process unless one of these conditions is satisfied: (1) the foreclosure process is more than 37 days before a sale; the borrower has been sent a notice that he or she is not eligible for any loss mitigation option and this decision cannot be appealed, or the decision on any appeal has been made; or (2) borrower rejects all options offered by the servicer, or (3) borrower fails to perform under loss mitigation agreement | 12 CFR § 1024.41(g) | The foreclosure process may not move forward after referral to a foreclosure attorney if the servicer receives a *completed* loan modification application within 30 days after the letter from the foreclosure attorney. This servicer must not seek a foreclosure judgment or order of sale, or foreclosure sale while the loan modification application is under consideration. Note that only the initial letter (sent within 5 business days of referral) from the foreclosure attorney will give borrower 30 days to submit a complete loan modification application. | IV.B.4 |

©2013 National Consumer Law Center  www.nclc.org

# Exhibit G
# 12 USC §2605(f) Damages and Costs for Loss Mitigation Procedure Violation

## DAMAGES

**Damages –12 U.S.C. § 2605 (f)**
　　RESPA entitles borrowers to a private right of action based on violations of the Act.

　　**Damages for individuals include:**
1) Any actual damages to the borrower as the result of the failure.
2) Any additional damages, as the court may allow, in the case of a practice or pattern of noncompliance, an amount up to $2,000 for each such violation.

# **Exhibit H**
# **FDCPA 15 U.S.C. §§1692**



**FEDERAL TRADE COMMISSION**
PROTECTING AMERICA'S CONSUMERS

# Fair Debt Collection Practices Act

## Fair Debt Collection Practices Act

### As amended by Public Law 104-208, 110 Stat. 3009 (Sept. 30, 1996)

To amend the Consumer Credit Protection Act to prohibit abusive practices by debt collectors.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the Consumer Credit Protection Act (15 U.S.C. 1601 et seq.) is amended by adding at the end thereof the following new title:

TITLE VIII - DEBT COLLECTION PRACTICES  [Fair Debt Collection Practices Act]

Sec.

801.  Short Title
802.  Congressional findings and declaration of purpose
803.  Definitions
804.  Acquisition of location information
805.  Communication in connection with debt collection
806.  Harassment or abuse
807.  False or misleading representations
808.  Unfair practice
809.  Validation of debts
810.  Multiple debts
811.  Legal actions by debt collectors
812.  Furnishing certain deceptive forms
813.  Civil liability
814.  Administrative enforcement
815.  Reports to Congress by the Commission
816.  Relation to State laws
817.  Exemption for State regulation
818.  Effective date

## § 801.  Short Title  [15 USC 1601 note]

This title may be cited as the "Fair Debt Collection Practices Act."

# § 802.  Congressional findings and declarations of purpose [15 USC 1692]

(a) There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

(b) Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c) Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

(d) Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e) It is the purpose of this title to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

# § 803.  Definitions [15 USC 1692a]

As used in this title --

(1) The term "Commission" means the Federal Trade Commission.

(2) The term "communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium.

(3) The term "consumer" means any natural person obligated or allegedly obligated to pay any debt.

(4) The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

(5) The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

(6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 808(6), such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include --

(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

(B) any person while acting as a debt collector for another person, both of whom are related by common

ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

(C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;

(D) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;

(E) any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

(7) The term "location information" means a consumer's place of abode and his telephone number at such place, or his place of employment.

(8) The term "State" means any State, territory, or possession of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or any political subdivision of any of the foregoing.

# § 804.  Acquisition of location information  [15 USC 1692b]

Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall --

(1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer;

(2) not state that such consumer owes any debt;

(3) not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information;

(4) not communicate by post card;

(5) not use any language or symbol on any envelope or in the contents of any communication effected by the mails or telegram that indicates that the debt collector is in the debt collection business or that the communication relates to the collection of a debt; and

(6) after the debt collector knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address, not communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to the communication from the debt collector.

# § 805.  Communication in connection with debt collection  [15

# USC 1692c]

(a) COMMUNICATION WITH THE CONSUMER GENERALLY.  Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt --

(1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antimeridian and before 9 o'clock postmeridian, local time at the consumer's location;

(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer; or

(3) at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication.

(b) COMMUNICATION WITH THIRD PARTIES.  Except as provided in section 804, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

(c) CEASING COMMUNICATION.  If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except --

(1) to advise the consumer that the debt collector's further efforts are being terminated;

(2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or

(3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

If such notice from the consumer is made by mail, notification shall be complete upon receipt.

(d) For the purpose of this section, the term "consumer" includes the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator.

# § 806.  Harassment or abuse  [15 USC 1692d]

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 603(f) or 604(3)1 of this Act.

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 804, the placement of telephone calls without meaningful disclosure of the caller's identity.

# § 807.  False or misleading representations  [15 USC 1692e]

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

(2) The false representation of –

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to --

(A) lose any claim or defense to payment of the debt; or

(B) become subject to any practice prohibited by this title.

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(9) The use or distribution of any written communication which simulates or is falsely represented to be a

document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

(12) The false representation or implication that accounts have been turned over to innocent purchasers for value.

(13) The false representation or implication that documents are legal process.

(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

(15) The false representation or implication that documents are not legal process forms or do not require action by the consumer.

(16) The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 603(f) of this Act.

# § 808.  Unfair practices [15 USC 1692f]

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.

(3) The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.

(4) Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

(5) Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if –

(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

(B) there is no present intention to take possession of the property; or

(C) the property is exempt by law from such dispossession or disablement.

(7) Communicating with a consumer regarding a debt by post card.

(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

# § 809.  Validation of debts   [15 USC 1692g]

(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing --

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or any copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

(c) The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

# § 810.  Multiple debts  [15 USC 1692h]

If any consumer owes multiple debts and makes any single payment to any debt collector with respect to such debts, such debt collector may not apply such payment to any debt which is disputed by the consumer and, where applicable, shall apply such payment in accordance with the consumer's directions.

# § 811.  Legal actions by debt collectors   [15 USC 1692i]

(a) Any debt collector who brings any legal action on a debt against any consumer shall --

(1) in the case of an action to enforce an interest in real property securing the consumer's obligation, bring such action only in a judicial district or similar legal entity in which such real property is located; or

(2) in the case of an action not described in paragraph (1), bring such action only in the judicial district or similar legal entity –

(A) in which such consumer signed the contract sued upon; or

(B) in which such consumer resides at the commencement of the action.

(b) Nothing in this title shall be construed to authorize the bringing of legal actions by debt collectors.

# § 812.  Furnishing certain deceptive forms  [15 USC 1692j]

(a) It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

(b) Any person who violates this section shall be liable to the same extent and in the same manner as a debt collector is liable under section 813 for failure to comply with a provision of this title.

# § 813.  Civil liability  [15 USC 1692k]

(a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this title with respect to any person is liable to such person in an amount equal to the sum of –

(1) any actual damage sustained by such person as a result of such failure;

(2) (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

(B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

(b) In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors --

(1) in any individual action under subsection (a)(2)(A), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional; or

(2) in any class action under subsection (a)(2)(B), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional.

(c) A debt collector may not be held liable in any action brought under this title if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error

notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

(d) An action to enforce any liability created by this title may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.

(e) No provision of this section imposing any liability shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the Commission, notwithstanding that after such act or omission has occurred, such opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

# § 814.  Administrative enforcement   [15 USC 1692l]

(a) Compliance with this title shall be enforced by the Commission, except to the extend that enforcement of the requirements imposed under this title is specifically committed to another agency under subsection (b). For purpose of the exercise by the Commission of its functions and powers under the Federal Trade Commission Act, a violation of this title shall be deemed an unfair or deceptive act or practice in violation of that Act. All of the functions and powers of the Commission under the Federal Trade Commission Act are available to the Commission to enforce compliance by any person with this title, irrespective of whether that person is engaged in commerce or meets any other jurisdictional tests in the Federal Trade Commission Act, including the power to enforce the provisions of this title in the same manner as if the violation had been a violation of a Federal Trade Commission trade regulation rule.

(b) Compliance with any requirements imposed under this title shall be enforced under –

(1) section 8 of the Federal Deposit Insurance Act, in the case of –

(A) national banks, by the Comptroller of the Currency;

(B) member banks of the Federal Reserve System (other than national banks), by the Federal Reserve Board; and

(C) banks the deposits or accounts of which are insured by the Federal Deposit Insurance Corporation (other than members of the Federal Reserve System), by the Board of Directors of the Federal Deposit Insurance Corporation;

(2) section 5(d) of the Home Owners Loan Act of 1933, section 407 of the National Housing Act, and sections 6(i) and 17 of the Federal Home Loan Bank Act, by the Federal Home Loan Bank Board (acting directing or through the Federal Savings and Loan Insurance Corporation), in the case of any institution subject to any of those provisions;

(3) the Federal Credit Union Act, by the Administrator of the National Credit Union Administration with respect to any Federal credit union;

(4) subtitle IV of Title 49, by the Interstate Commerce Commission with respect to any common carrier subject to such subtitle;

(5) the Federal Aviation Act of 1958, by the Secretary of Transportation with respect to any air carrier or any foreign air carrier subject to that Act; and

(6) the Packers and Stockyards Act, 1921 (except as provided in section 406 of that Act), by the Secretary of Agriculture with respect to any activities subject to that Act.

(c) For the purpose of the exercise by any agency referred to in subsection (b) of its powers under any Act referred to in that subsection, a violation of any requirement imposed under this title shall be deemed to be a violation of a requirement imposed under that Act. In addition to its powers under any provision of law specifically referred to in subsection (b), each of the agencies referred to in that subsection may exercise, for the purpose of enforcing compliance with any requirement imposed under this title any other authority conferred on it by law, except as provided in subsection (d).

(d) Neither the Commission nor any other agency referred to in subsection (b) may promulgate trade regulation rules or other regulations with respect to the collection of debts by debt collectors as defined in this title.

# § 815.  Reports to Congress by the Commission  [15 USC 1692m]

(a) Not later than one year after the effective date of this title and at one-year intervals thereafter, the Commission shall make reports to the Congress concerning the administration of its functions under this title, including such recommendations as the Commission deems necessary or appropriate. In addition, each report of the Commission shall include its assessment of the extent to which compliance with this title is being achieved and a summary of the enforcement actions taken by the Commission under section 814 of this title.

(b) In the exercise of its functions under this title, the Commission may obtain upon request the views of any other Federal agency which exercises enforcement functions under section 814 of this title.

# § 816.  Relation to State laws  [15 USC 1692n]

This title does not annul, alter, or affect, or exempt any person subject to the provisions of this title from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this title, and then only to the extent of the inconsistency. For purposes of this section, a State law is not inconsistent with this title if the protection such law affords any consumer is greater than the protection provided by this title.

# § 817.  Exemption for State regulation   [15 USC 1692o]

The Commission shall by regulation exempt from the requirements of this title any class of debt collection practices within any State if the Commission determines that under the law of that State that class of debt collection practices is subject to requirements substantially similar to those imposed by this title, and that there is adequate provision for enforcement.

# § 818.  Effective date  [15 USC 1692 note]

This title takes effect upon the expiration of six months after the date of its enactment, but section 809 shall apply only with respect to debts for which the initial attempt to collect occurs after such effective date.

Approved September 20, 1977

# ENDNOTES

1. So in original; however, should read "604(a)(3)."

# LEGISLATIVE HISTORY:

Public Law 95-109 [H.R. 5294]

HOUSE REPORT No. 95-131 (Comm. on Banking, Finance, and Urban Affairs).

SENATE REPORT No. 95-382 (Comm. on Banking, Housing, and Urban Affairs).

CONGRESSIONAL RECORD, Vol. 123 (1977):

Apr. 4, considered and passed House.

Aug. 5, considered and passed Senate, amended.

Sept. 8, House agreed to Senate amendment.

WEEKLY COMPILATION OF PRESIDENTIAL DOCUMENTS, Vol. 13, No. 39:

Sept. 20, Presidential statement.

# AMENDMENTS:

SECTION 621, SUBSECTIONS (b)(3), (b)(4) and (b)(5) were amended to transfer certain administrative enforcement responsibilities, pursuant to Pub. L. 95-473, § 3(b), Oct. 17, 1978. 92 Stat. 166; Pub. L. 95-630, Title V. § 501, November 10, 1978, 92 Stat. 3680; Pub. L. 98-443, § 9(h), Oct. 4, 1984, 98 Stat. 708.

SECTION 803, SUBSECTION (6), defining "debt collector," was amended to repeal the attorney at law exemption at former Section (6)(F) and to redesignate Section 803(6)(G) pursuant to Pub. L. 99-361, July 9, 1986, 100 Stat. 768. For legislative history, see H.R. 237, HOUSE REPORT No. 99-405 (Comm. on Banking, Finance and Urban Affairs). CONGRESSIONAL RECORD: Vol. 131 (1985): Dec. 2, considered and passed House. Vol. 132 (1986): June 26, considered and passed Senate.

SECTION 807, SUBSECTION (11), was amended to affect when debt collectors must state (a) that they are attempting to collect a debt and (b) that information obtained will be used for that purpose, pursuant to Pub. L. 104-208 § 2305, 110 Stat. 3009 (Sept. 30, 1996).



ftc.gov