UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-81522-CIV-MARRA

KAREN C. YEH HO,

       Plaintiff,

v.

WELLS FARGO BANK, N.A.,

       Defendant.

_____/

## OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant Wells Fargo Bank, N.A.'s

Motion for Summary Final Judgment [DE 71]. The Court has carefully considered the

motion, response, reply, the entire Court file, and is otherwise fully advised in the

premises.

## Background

Following this Court's dismissal of Plaintiff's Complaint in its entirety, the

Court of Appeal for the Eleventh Circuit reversed the dismissal of Plaintiff's Real

Estate Settlement Practices Act ("RESPA") claim and remanded to this Court.

Defendant filed an Answer and Affirmative Defenses to the Complaint. Thereafter,

Plaintiff was granted leave to file an Amended Complaint. Defendant filed a Motion

to Dismiss the Amended Complaint, and this Court entered an Order granting

Defendant's Motion to Dismiss as to Plaintiff's Fair Housing Act claim (Count II), and

denied the Motion to Dismiss as to Plaintiff's Equal Credit Opportunity Act claim

(Count I) and her RESPA violation claim (Count III). Plaintiff did not file a Second

Amended Complaint, therefore, the remaining claims before the Court are Count I

alleging a violation of Equal Credit Opportunity Act, and Count III alleging a violation of RESPA.  Defendant moves for summary judgment as to both claims.

**Undisputed Material Facts[1]**

1. On November 30, 2007, Plaintiff executed a promissory note ("Note")[2] secured by a mortgage ("Mortgage")[3] executed by Plaintiff and her husband, Wing Kei Ho (collectively, "Borrowers") on the subject Property.  The loan was subsequently transferred to Defendant, who filed a foreclosure complaint on February 16, 2012 against the Borrowers alleging payment defaults since August 1, 2011.  DE 41 at 83-91.  The loan related to the servicing of a residential mortgage. DE 41 at 1, ¶ 1.

2. Based on a review of their records, Defendant offered Plaintiff a streamlined modification trial period plan in July 2013 ("Offer Letter").  DE 72-1, *see also* DE 41 at 241-248.  The Offer Letter informed her that she was eligible for a loan modification as an option to stay in her home and, if she wanted to pursue this option, the offer required her to make timely payments on her Mortgage under a Streamlined Modification Trial Period Plan ("Trial Period Plan" or "TPP").  *Id*.

3. The TPP required three payments in the amount of $2,495 due on September 1, 2013, October 1, 2013, and November 1, 2013.  Plaintiff made three timely TPP payments.  DE 78, ¶ 13.

---

[1] "All material facts set forth in the movant's statement filed and supported as required by [Local Rule 56.1(a)] will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record."  S.D. Fla. L.R. 56.1(b).
[2] DE 41 at 89-91 shows portions of the Note, which was executed solely by Plaintiff.
[3] DE 82-1 shows the Mortgage, signed and initialed by both Plaintiff and her husband, Wing Kei Ho.

4. In November 2013, Plaintiff was approved for a loan modification and Defendant generated a Loan Modification Agreement ("Modification Agreement" or "Agreement"). DE 41 at 142-156; DE 72, Ex. B. The Modification Agreement required the signatures of Plaintiff <u>and</u> Wing Kei Ho – Plaintiff's husband and co-signor on the Mortgage. *Id.*

5. Defendant received back the Modification Agreement on December 6, 2013 with only Plaintiff's signature. Wing Kei Ho had not signed the Modification Agreement although his signature was expressly required by the terms of the Modification Agreement. DE 41 at 142-156.

6. Plaintiff states she sent back the copy of the loan modification she received with her signature notarized by "a Florida Notary that can be found when you do a Notary search." DE 78, ¶ 16. Plaintiff states that she thought if she "wait[ed] for [Defendant's] notary any longer," the delay would result in her "sending in payment and package late which [Defendant] can use as rejection." *Id.,* ¶ 15.

7. Plaintiff alleges that after Defendant's receipt of the Agreement on December 6, 2013, it accepted two more payments under the TPP in December 2013 and January 2014, but rejected payments made thereafter. DE 41 at 10, ¶¶ 16, 19-20.

8. Plaintiff "never got a written confirmation of [Defendant]'s receipt of the agreement or any indication of whether the agreement was complete or other loan modification options were available." *Yeh Ho v. Wells Fargo Bank, N.A.*, 739 F.App'x 525, 527 (11th Cir. 2018).

9. Plaintiff avers that on December 6, 2013, Defendant told her "that they received the permanent streamline loan modification package and the December 2013 check. I asked if there is any problem. The representative state no problem." Plaintiff Affidavit ("Aff."), DE 78, ¶ 23.

10. "On December 17, 2014, [Plaintiff] received the first written response from [Defendant] about her loan modification agreement. This was over a year after she'd sent the agreement to [Defendant] and after her home was sold. In the letter, [Defendant] explained it rejected [Plaintiff's] loan modification agreement as incomplete because it was unsigned by her husband." *Yeh Ho v. Wells Fargo Bank, N.A.*, 739 F.App'x 525, 527 (11th Cir. 2018).

11. Specifically, the December 17, 2014 letter ("Denial Letter") stated

Upon successful completion of the trial payment plan, a modification agreement was approved. On November 26, 2013, we sent the original packet with the terms of the modification to First American Notary and a copy of the modification packet to you.

The original modification packet was sent to the notary who was to contact you to set up a time to sign the modification documents. The loan modification copy sent to your attention included instructions that a notary would be in contact with you to sign the original modification documents.

From November 27, 2013, through December 06, 2013, we attempted to contact you via telephone to see if you had been contacted by First American Notary service to establish a time to sign the modification documents.

On December 06, 2013, we received the signed agreement from you. However, upon review of the signed agreement, we found that Wing Kei Ho did not sign and the agreement was stamped "copy". As a result, the signed agreement was not accepted.

From December 09, 2013, through December 31, 2013, we attempted multiple times to contact you via telephone to inform you that the following items were needed to complete the loan modification:

- We received a Quit Claim Deed but also needed a divorce decree

- Signed redrafted modification documents or original modification documents signed by both you and Wing Kei Ho
- Your marital status

We're unable to complete a modification for your account as you did not return the original signed modification documents. As a result, your account was removed from this review on January 13, 2014.

DE 72 at 33-34, Ex. E.

12. On May 27, 2014, the foreclosure case was set for a non-jury trial on July 17, 2014. DE 10, Ex. A, Doc. 85. Just two days before trial, Plaintiff, through counsel, filed a motion for continuance, which was denied at a hearing the morning of trial. DE 41 at 138-140, 157-158.

13. On the day of trial, counsel for Defendant and the Borrowers' attorney (apparently without Plaintiff's knowledge or consent) executed a stipulation to the entry of judgment in favor of Defendant ("Stipulation to Judgment") whereby Defendant agreed to request a sale date no less than one-hundred twenty days from the date of the judgment and the Borrowers (i) acknowledged Defendant's standing; (ii) admitted their default; (iii) admitted Defendant fulfilled all conditions precedent; (iv) admitted their interest in the subject property was inferior; (v) withdrew all affirmative defenses or counterclaims regarding fulfillment of conditions precedent; (vi) acknowledged the validity of the debt; (vii) consented to entry of judgment; and (viii) waived all rights or defenses to object or otherwise impede or delay the foreclosure sale and issuance of the certificate of title. DE 41 at 159-162. Accordingly, a final judgment was entered ("Final Judgment"), setting a foreclosure sale date of November 14, 2014. DE 41 at 163-169.

14. On October 14, 2014, an order was entered permitting counsel to withdraw from the foreclosure action.  DE 41 at 183.  On that same day, Plaintiff appears to have filed a motion to vacate the sale and set a trial date.  DE 41 at 181.  Similarly, on November 10, 2014, Plaintiff filed yet another motion to cancel the sale.  DE 41 at 184.  On November 12, 2014, the foreclosure court denied Plaintiff's requests to cancel the sale.  DE 41 at 185.

15. On November 14, 2014, pursuant to the Final Judgment, the Property was sold at a foreclosure sale ("Foreclosure Sale") to Federal National Mortgage Association ("FNMA") for a credit-bid of $250,100.  DE 10, Ex. A, Doc 126.

16. On January 16, 2015, the foreclosure court denied Plaintiff's request to vacate Final Judgment or rescind the Foreclosure Sale.  DE 41 at 226.

17. On January 23, 2015 the Borrowers filed a Notice of Appeal with the Fourth District Court of Appeal.  DE 10, Ex. B.  On February 13, 2015, Plaintiff filed her brief.  *Id.*  Following the briefing, on October 1, 2015 the Appellate Court entered its decision affirming the foreclosure on the Property.  *Id.*

18. On November 4, 2015, Plaintiff filed her Complaint against Defendant in this Court.  DE 1.  On August 29, 2016, this Court entered an Order granting Defendant's Motion to Dismiss and dismissed Plaintiff's Complaint in its entirety.  DE 15.  Plaintiff appealed the Order of Dismissal to the Eleventh Circuit Court of Appeal.  DE 21.

19. On appeal, the Eleventh Circuit affirmed the dismissal of all causes of action except for the RESPA claim.  DE 25.  In sum, the appellate Court held that the claim was not barred by Florida's litigation privilege and that Plaintiff had

alleged facts sufficient to state a claim under RESPA.  *Id.*  Accordingly, the

Eleventh Circuit remanded the action as to the RESPA claim to this Court for

further proceedings.  *Id.*  This Court filed an Order reopening the case on July

25, 2018.  DE 26.

## Standard of Review

A court must grant summary judgment when, viewing the evidence and factual

inferences in the light most favorable to the nonmoving party, the court finds that

there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law.  *Lofton v. Sec'y of Dept. of Children & Family Servs.*,

358 F.3d 804, 809 (11th Cir. 2004) (citing Fed. R. Civ. P. 56(c)).  Importantly, in

evaluating a motion for summary judgment, a court must disregard factual disputes

that are immaterial under the governing substantive law.  *Id.* ("Only factual disputes

that are material under the substantive law governing the case will preclude entry of

summary judgment."); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986) ("Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment. Factual disputes

that are irrelevant or unnecessary will not be counted.").

Once the moving party has met its burden, Rule 56(e) requires the nonmoving

party to go beyond the pleadings and by its own affidavits, or by the depositions,

answers to interrogatories, and admissions on file, designate specific facts showing

that there is a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324

(1986).  For an Equal Credit Opportunity Act claim of discrimination based on sex or

marital status, the ultimate burden of persuasion remains with the claimant.  Equal Credit Opportunity Act, § 701(a)(1), 15 U.S.C.A. § 1691(a)(1); 12 C.F.R. § 202.1.

"A document filed pro se is "to be liberally construed," and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  "A careful and meticulous analysis first by the parties, but ultimately by the district court will aid significantly in preventing the waste of private and judicial resources and time." *Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir 1981); *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980).

## Equal Credit Opportunity Act[4]

The Equal Credit Opportunity Act ("ECOA") is an anti-discrimination statute which creates a private right of action against a creditor who "discriminate[s] against any applicant, with respect to any aspect of a credit transaction … on the basis of race, color, religion, national origin, sex or marital status, or age."  15 U.S.C. § 1691(a)(1).  The ECOA is a remedial statute that must be construed "broadly to effectuate its remedial goals." *Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1208 (11th Cir. 2019) citing *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1211 n.6 (6th Cir. 1997); *Securities and Exchange Commission v. Levin*, 849 F.3d 995, 1001 (11th Cir.

---

[4]  Plaintiff's original Complaint did not include an ECOA claim, so when Plaintiff raised it before the Eleventh Circuit on appeal, the appellate court determined that it was "not properly before [it] on appeal."  The Eleventh Circuit advised Plaintiff "[t]he proper way to raise a new claim is to amend the complaint through the procedures in Federal Rule of Civil Procedure 15." *Yeh Ho v. Wells Fargo Bank, N.A.*, 739 F.App'x 525, 531 (11th Cir. 2018).  This she did, and now this ECOA claim is properly before the Court.

2017) (observing that remedial legislation "is entitled to a broad construction"); and *Morante-Navarro v. T&Y Pine Straw, Inc.*, 350 F.3d 1163, 1166 (11th Cir. 2003).

It "was enacted, in part, to address discrimination against married women in obtaining credit." *Richardson v. Everbank*, 152 So.3d 1282, 1285 (Fla. Dist. Ct. App. 2015). "Regulation B,[5] which was promulgated to implement the prohibition, 12 C.F.R. § 202.1 (2012), specifically bans a lender from requiring an applicant's spouse to guarantee a loan if the applicant otherwise qualifies for the loan." *Id.*

"However, the signature of a spouse or other party may properly be required in a number of circumstances, including to make the property relied upon for credit accessible to the creditor in the event of default or where the liability of an additional party is necessary to support the credit requested. 12 C.F.R. § 202.7(d)." *Id.; see also Gonzalez v. NAFH Nat'l Bank,* 93 So.3d 1054, 1057–58 (Fla. Dist. Ct. App. 2012) (finding no violation of ECOA and explaining that it was "not just reasonable but prudent for the creditor bank to have [wife] execute the mortgage" where real property securing loan was jointly owned by husband and wife).

It appears that *pro se* Plaintiff is asserting a number of ECOA violations, including that Defendant violated the ECOA when, in its Denial Letter, it inquired about her marital status, when it requested a divorce decree (in response to receiving a quit claim deed), and when it required her husband's signature on the Modification Agreement. Complaint ("Compl."), DE 41, ¶¶ 124, 127-129, UMF, ¶ 7. It also appears

---

[5] "Congress mandated that the agency charged with overseeing ECOA - first the Federal Reserve, now the Consumer Financial Protection Bureau - promulgate regulations 'to carry out the [statute's] purposes.'" *RL BB Acquisition, LLC v. Bridgemill Commons Dev'pt Grp.*, LLC, 754 F.3d 380, 383 (6th Cir. 2014) (quoting 15 U.S.C. § 1691b(a)). "Regulation B is the result of Congress's directive." *Id.*

Plaintiff is complaining that the original lender violated the ECOA when it required her husband to co-sign the Mortgage in 2007.  DE 41, ¶ 124.

As far as her claim that Defendant violated the ECOA when, in its Denial Letter, it inquired about her marital status, and requested a divorce decree (in response to receiving a quit claim deed), this claim also fails as a matter of law.  Discrimination is an essential element that must be established for a claimant to proceed under section 1691(a).  *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1336 (11th Cir. 2000); *Ballerino v. Countrywide Home Loans, Inc.*, No. 09-20239, 2009 WL 2460739, at *2 (S.D. Fla. July 15, 2009).  The ECOA specifically spells out that "*activities not constituting discrimination*" include a creditor's "inquiry of marital status if such inquiry is for the purpose of ascertaining the creditor's rights and remedies applicable to the particular extension of credit and not to discriminate in a determination of credit-worthiness."  15 U.S.C. § 1691(b)(1) (emphasis supplied).

In addition, there is an express exception for requiring a spouse's signature in section 1691d of the ECOA, which states that requests for a spouse's signature "for the purpose of creating a valid lien, passing clear title, waiving inchoate rights to property, or assigning earnings, shall not constitute discrimination" under the Act.  15 U.S.C. § 1691d(a); *see also* 12 C.F.R. § 202.7(d)(1) (stating "[e]xcept as provided in this paragraph, a creditor shall not require the signature of an applicant's spouse or other person, *other than a joint applicant*, on any credit instrument *if* the applicant" is creditworthy for the amount and terms requested) (emphasis supplied); 12 C.F.R. § 202.7(d)(4) (confirming that with regard to "secured credit, a creditor may require the signature of the applicant's spouse ... on any instrument necessary, or reasonably

believed by the creditor to be necessary … to make the property being offered as security available to satisfy the debt in the event of a default, for example, an instrument to create a valid lien, pass clear title, waive inchoate rights, or assign earnings").

Cases in both Florida and across the country have applied this exception. *See, e.g., Gonzalez v. NAFH Nat. Bank,* 93 So. 3d 1054, 1057–58 (Fla. Dist. Ct. App. 2012) (holding that requiring signature of both spouses of jointly owned property "not just reasonable but prudent for the creditor bank to have [wife] execute the mortgage so as to create a valid lien against this property to assure payment in the event of a default."); *In re Woodford,* 600 B.R. 520, 524 (Bankr. W.D. Va. 2019) (rejecting ECOA claim by debtor-wife that requiring husband to execute deed of trust as collateral for wife's loan was discriminatory); *Ballard v. Bank of Am., N.A.,* 734 F.3d 308, 311 (4th Cir. 2013) ("ECOA regulations clarify that, in an application for secured credit, 'a creditor may require the signature of the applicant's spouse … on any instrument necessary, or reasonably believed by the creditor to be necessary, under applicable state law to make the property being offered as security available to satisfy the debt in the event of default.'") (quoting 12 C.F.R. § 202.7(d)(4)); *United States v. Joseph Hirsch Sportswear, Co.,* No. 85–CV–1546, 1989 WL 20604, at *2 (E.D.N.Y. Feb. 28, 1989) (holding that execution of mortgages by spouses to establish valid liens is a "practice that does not violate the ECOA") (citing 15 U.S.C. § 1691d(a)).

Therefore, Plaintiff's argument that Defendant violated ECOA when it required her husband execute the Modification Agreement is directly contradicted by the plain language of the statute. As indicated in the letter dated November 25, 2013,

Defendant explicitly noted "[a]ll mortgagors needed to sign their name as it is printed on the documents in blue or black ink."  DE 72, Ex. B.  This same letter further explained upon provision of additional documents showing a mortgagor would no longer be included, Defendant could remove them, such as a divorce decree.  *Id.*

It is undisputed that Plaintiff's husband is a co-owner on the deed[6] and is a signatory to the Mortgage.  Even if Plaintiff's husband conveyed his interest in the property to Plaintiff by way of a quit claim deed, if he was still married to Plaintiff and residing at the property, he would have a homestead right to the property.  *Jones v. Federal Farm Mortg. Corp.*, 188 So. 804, 805 (Fla. 1939) (it is settled law that the homestead cannot be mortgaged without the joint consent of both spouses); *Taylor v. Maness*, 941 So.2d 559, 563 (Fla. Dist. Ct. App. 2006) ("the owner of homestead real estate must, if married, be joined by his or her spouse in order to alienate the homestead"); *Pitts v. Pastore*, 561 So.2d 297, 300 (Fla. Dist. Ct. App. 1990) (the Florida constitution "requires the owner's spouse to join in any alienation of homestead property").  Thus, an inquiry about his marital status relative to Plaintiff was reasonable, relevant, and not discriminatory.  *See* 12 C.F.R. § 202.7(d)(4) (confirming that with regard to "secured credit, a creditor may require the signature of the applicant's spouse ... on any instrument necessary, or reasonably believed by the creditor to be necessary ... to make the property being offered as security available to satisfy the debt in the event of a default, for example, an instrument to create a valid lien, pass clear title, waive inchoate rights, or assign earnings").  This

---

[6]  The Court takes judicial notice of the recorded deed at Book Number 22301, Page 1318 from Palm Beach County Public Records.  Fed. R. Evid. 201(b); *Horne v. Potter*, 392 F.App'x 800, 802 (11th Cir. 2010) (holding district court may take judicial notice of public records)

regulation also defeats Plaintiff's assertion that the ECOA "prohibition states that is is (sic) illegal for creditors to insisted (sic) on Karen Yeh Ho's husband, Wing Kei Ho must sign the mortgage."  Compl. ¶ 124.

<u>Adverse Action</u>

In the end, the *anti-discrimination protections* of ECOA are inapplicable to Plaintiff's case, as Plaintiff's loan was already in default and in active foreclosure at the time Plaintiff attempted to apply for a loan modification.  DE 41 at 83-91; McNeal Decl. ¶ 8 (DE 72); 15 U.S.C. § 1691(d)(6); 12 C.F.R. § 202.2(c)(2)(ii).  It is undisputed that Plaintiff had already defaulted on her mortgage loan when Defendant offered her a loan modification.[7]  Under the plain language of the ECOA and its regulations, Defendant's ultimate refusal to allow Plaintiff to modify her loan, which was in foreclosure, does not constitute an adverse action and therefore her claim for discrimination fails as a matter of law.  *Molina v. Aurora Loan Services, LLC*, 635 F.App'x 618, 624 (11th Cir. 2015) ("*Molina*") *cert. denied sub nom. Molina v. Aurora Loan Srvcs.*, -- U.S. --, 136 S.Ct. 2465 (2016); *see also, Stefanowicz v. SunTrust Mortg.*, No. 3:16-00368, 2017 WL 1103183, at *7-8 (M.D. Pa. Jan. 9, 2017), (rejecting a plaintiff's ECOA discrimination claim, in part because "[i]t is also clear from the facts alleged that [plaintiff] was in default at the time of the alleged discrimination, under which circumstances the defendants' failure to allow her to modify her loan does not constitute a prohibited 'adverse action'" (citations omitted)), report and recommendation adopted, No. 3:16-CV-00368, 2017 WL 1079163 (M.D. Pa. Mar. 22, 2017); *Berry v. Wells Fargo*, No. 15-5269, 2015 WL 8601866, at *4 (N.D. Ill. Dec. 14,

---

[7] UMF ¶ 1.

2015) (rejecting a Plaintiff's ECOA discrimination claim because "the latest alleged 'credit transaction' that could qualify as an 'adverse action' under the ECOA was [plaintiff's] November 2009 attempt to receive a loan modification. The foreclosure proceedings and all the allegations that accompany those proceedings do not fall within the 'adverse action' definition necessary to state an ECOA claim"); *Mashburn v. Wells Fargo Bank, N.A.*, No. C11-0179-JCC, 2011 WL 2940363, *6 (W.D. Wash. Jul.19, 2011) ("Defendant's denial of the loan modification does not constitute an adverse action, because it was a refusal to extend additional credit under an existing credit arrangement where the applicant was delinquent.").

<u>Notification</u>

Finally, Plaintiff alleges an ECOA violation pursuant to 15 U.S.C. § 1691(d)(1)[8] which provides that within thirty days "after receipt of a completed application for credit, a creditor shall notify the applicant of its actions on the application." [9] *See Regions Bank v. Legal Outsource PA,* 936 F.3d 1184, 1192 (11th Cir. 2019); 12 C.F.R. § 202.9(a); Compl. ¶ 123. "At least one court has correctly observed that the case law in the Eleventh Circuit is 'scant' as to the question of whether a showing of

---

[8] A plaintiff may maintain a private right of action to recover actual damages, punitive damages, costs and attorney fees caused by violations of ECOA notification requirements. See 15 U.S.C. § 1691e(a), (b), (d); *Stevens v. GFC Lending, LLC,* 138 F.Supp.3d 1345, 1348 (N.D. Ala. 2015); *Chen v. Whitney Nat. Bank,* 65 So.3d 1170, 1172-73 (Fla. Dist. Ct. App. 2011); *Ford v. Citizens and Southern Nat. Bank,* 700 F.Supp. 1121, 1123 (N.D. Ga. 1988); *Cherry v. Amoco Oil Co.,* 490 F.Supp. 1026, 1029 (D.C. Ga. 1980).
[9] There are two different potential ECOA violations: claims for discrimination (15 U.S.C. § 1691(a)) and claims for inadequate notice (15 U.S.C. § 1691(d)). These are separate causes of action with their own elements. *See, e.g., Green v. Central Mortgage Co.*, 148 F. Supp. 3d 852, 879 (N.D. Cal. 2015) (distinguishing between discrimination claims under § 1691(a)-(c) and violations of procedure under § 1691(d)-(e)); *Davis v. U.S. Bancorp,* 383 F.3d 761, 766 (8th Cir. 2004) (setting apart ECOA's procedural requirements for extending credit and communicating with applicants from "generalized prohibition of discrimination"); *see also Vasquez v. Bank of Am., N.A.*, 2013 WL 6001924 at *11 (N.D. Cal. Nov. 12, 2013) (noting that courts "have explicitly recognized that the ECOA's notice requirements are distinct from the prohibition against discrimination in lending").

discrimination is required to trigger the [notification] protections of section 1691(d)." *Adams v. Bank of America, N.A.*, 237 F. Supp. 3d 1189, 1209 (N.D. Ala. 2017) citing *Ramos v. Wells Fargo Bank, N.A.*, 2016 WL 233142, at \*5 (S.D. Fla. Jan. 13, 2016) (which followed the logic of *Vasquez v. Bank of America, N.A.*, 2013 WL 6001924, at \*11 (N.D. Cal. Nov. 12, 2013) and held that a plaintiff need not plead that she was a victim of discrimination to state a claim under the ECOA).

Courts that have addressed this issue have squarely held that plaintiffs alleging a violation of the notice requirement of the ECOA pursuant to subsection (d) were not required to allege discrimination or be members of a protected class. *See Cannon v. Metro Ford, Inc.*, 242 F. Supp. 2d 1322, 1331 (S.D. Fla. 2002) (finding "that Plaintiff need not allege membership in a protected class to state a claim for violation of the ECOA's written notification requirements, 15 U.S.C. § 1691(d), as implemented by 12 C.F.R. § 202.9(a)(2)."); *Baez v. Potamkin Hyundai, Inc.*, No. 09-21910, 2010 WL 11553183, at \*7 (S.D. Fla. July 3, 2010) (same); *Jochum v. Pico Credit Corp.*, 730 F.2d 1041, 1043 n.3 (5th Cir. 1984) (finding that although the plaintiffs had not alleged discrimination, they stated a "cognizable claim" if they could prove that the creditor "failed to comply with the separate and independent notification requirements of § 1691(d)"); *Banks v. JP Morgan Chase Bank, N.A.*, 2015 WL 2215220, at \*5 (C.D. Cal. May 11, 2015) (holding that the elements of an ECOA notice claim do not include "borrower's membership in a protected class"); *Sayers v. General Motors Acceptance Corp.*, 522 F. Supp. 835, 840 (W.D. Mo. 1981) ("If a creditor fails to satisfy these [notification] requirements, he is in violation of the ECOA, regardless of whether he is engaged in any prohibited discriminatory action."); *Green v. Central Mortgage Co.*,

148 F. Supp. 3d 852, 879 (N.D. Cal. 2015) (finding that "[t]he defendants' argument does not distinguish between violations of ECOA's discrimination provisions and violations of ECOA's procedural requirements" and "ECOA's procedural requirements apply regardless of whether the [discrimination elements] have been satisfied"); *Thompson v. Galles Chevrolet Co.*, 807 F.2d 163, 166 (10th Cir. 1986) (regardless of whether it engaged in any prohibited discriminatory actions, a creditor violates the ECOA if it fails to satisfy the notification requirements, even for incomplete applications); *Coulibaly v. J.P. Morgan Chase Bank, N.A.*, No. 10-3517, 2012 WL 3985285, at *4 (D. Md. Sept. 7, 2012) ("When a creditor fails to comply with [Regulation B notification] requirements, it is in violation of the ECOA, regardless of whether it engaged in any prohibited discrimination").

Complete vs. Incomplete Application

Defendant's obligation to notify Plaintiff that her application was approved, that a counteroffer was made, or that an adverse action was taken, pursuant to 15 U.S.C. § 1691(d)(1) and 12 C.F.R. § 202.9(a)(l), *arises, however, only when an application is complete*. *Wright v. Suntrust Bank*, No. 04-CV-2258, 2006 WL 2714717, at *4 (N.D. Ga. Sept. 18, 2006). An application is deemed complete once a creditor "has received all the information that the creditor regularly obtains and considers in evaluating applications for the amount and type of credit requested (including, but not limited to, credit reports [and] any additional information requested from the applicant)." 12 C.F.R. § 202.2(f).

In this case, the record fails to reflect that Plaintiff's application was complete when received by Defendant on December 6, 2013, as Plaintiff's husband had not

signed it.  Therefore, the Court finds that Defendant did not have any obligation to notify Plaintiff pursuant to 15 U.S.C. § 1691(d)(1) or 12 C.F.R. § 202.9(a)(i), as alleged.

However, the fact that the notification obligations associated with *complete* applications were not triggered by receipt of Plaintiff's incomplete Modification Agreement on December 6, 2013 does not end the inquiry.  Regulation B provides, in pertinent part, that after receiving an application that is *incomplete* regarding matters that an applicant can complete, the creditor must notify the applicant 30 days after receiving the application that the application is incomplete.  *See* 12 C.F.R. § 202.9(c)(1)(ii)). [10]

With respect to the notification of incompleteness, Regulation B specifies that if additional information is needed from an applicant, the creditor must send a written notice to the applicant specifying the information needed, designating a reasonable period of time for the applicant to provide the information, and informing the applicant that failure to provide the information requested will result in no further consideration being given to the application (12 C.F.R. § 202.9(c)(2)), although

---

[10] "(c) Incomplete applications—
(1) Notice alternatives. Within 30 days after receiving an application that is incomplete regarding matters that an applicant can complete, the creditor shall notify the applicant either:
(i) Of action taken, in accordance with paragraph (a) of this section; or
(ii) Of the incompleteness, in accordance with paragraph (c)(2) of this section.
(2) Notice of incompleteness. If additional information is needed from an applicant, the creditor shall send a written notice to the applicant specifying the information needed, designating a reasonable period of time for the applicant to provide the information, and informing the applicant that failure to provide the information requested will result in no further consideration being given to the application. The creditor shall have no further obligation under this section if the applicant fails to respond within the designated time period. If the applicant supplies the requested information within the designated time period, the creditor shall take action on the application and notify the applicant in accordance with paragraph (a) of this section.
(3) Oral request for information. At its option, a creditor may inform the applicant orally of the need for additional information. If the application remains incomplete the creditor shall send a notice in accordance with paragraph (c)(1) of this section."  12 C.F.R. § 202.9(c).

it also provides that, at its option, a creditor may inform the applicant orally[11] of the need for additional information. *But*, if after orally notifying the applicant, the application remains incomplete, the creditor must then send written notice of incompleteness. *See* 12 C.F.R. § 202.9(c)(3).

*Thus, the creditor has a duty to notify an applicant if the application is incomplete.* If the creditor elects to notify the applicant orally, and the application remains incomplete, then the creditor is required to send written notice of the incompleteness. *Piotrowski v. Wells Fargo Bank, NA*, No. 11-3758, 2015 WL 4602591, at *7 (D. Md. July 29, 2015) citing *Kirk v. Kelley Buick of Atlanta, Inc.*, 336 F. Supp. 2d 1327, 1332 (N.D. Ga. 2004). And a creditor is required to use reasonable diligence in obtaining the information necessary to complete an applicant's application.[12] Regulation B provides that "[w]ithin 30 days after receiving an application that is incomplete regarding matters that an applicant can complete, the creditor shall notify the applicant either: (i)[o]f action taken ...; or (ii)[o]f the incompleteness...." 12 C.F.R. § 202.9(c)(1); *Wright v. Suntrust Bank*, No. 04-CV-2258, 2006 WL 2714717, at *4 (N.D. Ga. Sept. 18, 2006).

---

[11] Regulation 202.9(c)(3) provides that creditors can request the additional information from the applicant orally. Defendant claims to have attempted just this: that between December 9, 2013 and December 31, 2013, it "attempted multiple times to contact [Plaintiff] via telephone to inform" her that certain items were needed to complete the loan modification. UMF ¶ 7. However, because the application remained incomplete, Defendant was required to send a written notice in accordance with paragraph (c)(1). Regulation 202.9(c)(1) required Defendant either to notify Plaintiff of the action taken in accordance with 202.9(a) or provide a written notice of incompleteness in accordance with paragraph 202.9(c)(2).

[12] An Official Staff Interpretation of Regulation B states that although, with respect to what is a completed application, a creditor has the latitude to establish its own information requirements, the creditor nevertheless must act with reasonable diligence to collect information needed to complete the application, so that, for example, the creditor should request information from third parties, such as a credit report, promptly after receiving the application, and if additional information is needed from the applicant, such as an address or a telephone number to verify employment, the creditor should contact the applicant promptly. 12 C.F.R. Pt. 202, Supp. I § 202.2, ¶ 2(f)(6).

Plaintiff states in her Concise Statement of Material Facts that on "December 6, 2013, Wells Fargo Bank, N.A. told me that they received the permanent streamline loan modification package and the December 2013 check. I asked if there is any problem. The representative state no problem." DE 80 ¶ 3. A reasonable trier of fact could conclude that Plaintiff believed that her Modification Agreement had been accepted because Defendant accepted the new mortgage payment on January 2, 2014. DE 80 ¶ 4. It was only in February 2014 that Defendant first refused Plaintiff's payment. DE 80 ¶¶ 15-16.

Since Defendant presents no evidence of having given Plaintiff any written notice (until one year later, after her home was foreclosed), the Court finds that a genuine issue of material fact exists regarding whether Defendant violated Regulation B by failing to notify Plaintiff that it would not extend credit based on her incomplete application or that her application was incomplete. *Yeh Ho v. Wells Fargo Bank, N.A.*, 739 F.App'x 525, 527 (11th Cir. 2018); *Kirk v. Kelley Buick of Atlanta, Inc.*, 336 F. Supp. 2d 1327, 1332 (N.D. Ga. 2004).

### Real Estate Settlement Practices Act Claim

Plaintiff also alleges Defendant violated RESPA and its implementing regulations, known as Regulation X. *See* 12 U.S.C. § 2605(f); 12 C.F.R. §1024.41(a). DE 41 at 157-174. Specifically, Plaintiff contends that Defendant: (1) violated 12 C.F.R. § 1024.41(b) by not providing her with a written confirmation on the completeness of her "loan modification package" within five business days after receipt; (2) violated 12 C.F.R. § 1024.41(c) by not providing her a written response "on acceptance or other modification options" within 30 days of receipt of the "loan

modification package"; (3) violated 12 C.F.R. § 1024.41(c) by not providing Plaintiff

with written notification of its evaluation of the "loss mitigation documents"; and (4)

violated 12 C.F.R. § 1024.41(g) by proceeding with the foreclosure action on or about

December 6, 2013, while her "permanent streamline loan modification [was] in

place." DE 41 at 36-38, ¶¶ 159-174.

> Under RESPA, a consumer protection statute that regulates the real
> estate settlement process, the Consumer Financial Protection Bureau ("CFPB")
> is tasked with prescribing rules and regulations. *See* 12 U.S.C.S § 2617(a).
> RESPA's Regulation X, became effective January 10, 2014. *See* Mortgage
> Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation
> X), 78 Fed. Reg. 10696-01, 10696 (Feb. 14, 2013). This regulation places
> certain obligations on mortgage servicers when a borrower submits a loss
> mitigation application and lays out distinct procedures and rules for submitting
> such applications regarding measures for assessing completeness, timelines and
> evaluation protocols. *See generally* 12 C.F.R. § 1024.41.

*Clark v. HSBC Bank USA, National Association*, 664 F. App'x 810, 811-12 (11th Cir.

2016) ("*Clark*"). Among a servicer's duties under Regulation X — relevant to the

violations alleged in this action — are duties to: (1) evaluate a borrower's loss

mitigation application for completeness, (2) timely notify the borrower of missing

documents and information, and (3) refrain from obtaining a foreclosure judgment or

order of sale if a borrower submits a complete loss mitigation package after the

servicer has initiated foreclosure proceedings. *Id*. at 812 (citing 12 C.F.R. §

1024.41(b), (c), (g)).

In her Amended Complaint, Plaintiff asserts that Defendant violated all three

of the aforementioned provisions. DE 41 at 33-38. However, Plaintiff's loan

modification agreement was received by Defendant on December 6, 2013,[13] **before**

---

[13] Plaintiff concedes in her Opposition memorandum that Defendant "received her signed agreement on December 6, 2013." DE 79 at 3.

the effective date of Regulation X on January 10, 2014, relieving Defendant from any obligation to comply with Regulation X.  DE 41 at 35, ¶ 142; McNeal Decl. ¶ 19.

When a borrower submits an application for a loan modification to the loan servicer prior to the effective date of Regulation X, the borrower is precluded from sustaining a claim against the servicer under Regulation X.  *See Lage v. Ocwen Loan Servicing LLC*, 145 F. Supp. 3d 1172, 1184 (S.D. Fla. 2015) ("*Lage*") (concluding that borrower could not sustain a claim as a matter of law against loan servicer for a violation of Regulation X where borrower's loan modification application was submitted prior to the January 10, 2014 effective date of Regulation X);[14] *Clark*, 664 F.App'x at 813 (same); *Miller v. Bank of New York Mellon*, 228 F. Supp. 3d 1287, 1291 (M.D. Fla. 2017) (same).

In *Lage*, for example, the Court considered Ocwen's motion for summary judgment and recognized the obligations imposed upon servicers by Regulation X, but concluded that "in order for a borrower to avail himself or herself of Regulation X's protections, the borrower's application must be received by the servicer *after* the Effective Date [of Regulation X]."  *Id*. at 1184 (emphasis added).  Regulation X became effective on January 10, 2014.[15]  *Id*. at 1186 ("By imposing an effective date of January 10, 2014, the CFPB intended to institute a clear starting point with respect to when a servicer's obligations under Regulation X would be triggered.").

---

[14]  *Lage* was affirmed by the 11th Circuit, but the Court more narrowly held that because the application was not filed within the timeframe provided by 12 C.F.R. §1024.41(c), the protections of that provision were not triggered.  *See Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1011 (11th Cir. 2016).

[15]  Plaintiff acknowledges the January 10, 2014 effective date of Regulation X in her Amended Complaint.  *See* DE 41 at 4.

Therefore, even if a loss mitigation application is submitted before the effective date of Regulation X and becomes complete or "facially complete" sometime after the effective date, the servicer's obligations under 12 C.F.R. § 1024.41 do not apply. *See id.* at 1186 ("[T]he *submission* of the application on or after January 10, 2014 is a prerequisite to obtaining these protections set forth in 12 C.F.R. § 1024.41." (emphasis in original)). Thus, in *Lage*, where the borrower's application for a loan modification was received two days prior to the effective date of Regulation X, the servicer had no obligation to abide by Regulation X. *See id.* at 1188 ("Because Ocwen was under no obligation to review Plaintiffs' application at the point of its original submission under Regulation X, it had no continuing obligation to determine whether the application had achieved completeness. Thus, there was no requirement that Ocwen review the application within the 30-day period provided by 12 C.F.R. § 1024.41(c), and Ocwen was free to proceed with the foreclosure sale without fear of violating 12 C.F.R. § 1024.41(g)."). Consequently, the borrower's claim against the servicer for violations of 12 C.F.R. § 1024.41 failed as a matter of law. *See id.*

The same conclusion is required here. Defendant sent, and Plaintiff received, an offer for the TPP from Defendant in July 2013. DE 41 at 8, 241-248; McNeal Decl. ¶ 12, Ex. A. Defendant sent, and Plaintiff received, the Modification Agreement in November 2013. DE 41 at 9-10; McNeal Decl. ¶ 16, Ex. B. Plaintiff signed the Modification Agreement on December 4, 2013, and returned it to Defendant with only her signature. Defendant received it on December 6, 2013. DE 41 at 10, 142-156, McNeal Decl. ¶ 10. Plaintiff makes no allegation that she submitted an application for

a loan modification after sending the Modification Agreement to Defendant in early-December 2013 — approximately one month before the January 10, 2014 effective date of Regulation X.  As such, there is no evidence to support Plaintiff's claim that she submitted an application for a loss mitigation to which Regulation X would apply. *See Lage*, 145 F. Supp. 3d at 1186.  Because Defendant had no obligation to abide by the requirements of 12 C.F.R. § 1024.41, Plaintiff's claim is precluded by the Effective Date, fails as a matter of law, and Defendant is entitled to summary judgment. *See id.*  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant Wells Fargo Bank, N.A.'s Motion for Summary Final Judgment **[DE 71] is granted in part and denied in part**.  It is granted as to Count III, the RESPA claim.  It is denied as to Count I where genuine issues of material fact remain as to whether the notification provided by Defendant fell short of the notification requirements of the ECOA.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 19th day of February, 2020.

KENNETH A. MARRA
United States District Judge