UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-81522-CIV-MARRA/MATTHEWMAN

KAREN C. YEH HO,

    Plaintiff,

vs.

WELLS FARGO BANK, N.A.,

    Defendant.

_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This matter was tried before the Court. Based upon the evidence presented during the bench trial, the record in this matter, the argument of counsel and the *pro se* Plaintiff and otherwise being duly advised in the premises, the Court issues these findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

**I.**     **FINDINGS OF FACT**

    1.     On November 30, 2007, Plaintiff executed a promissory note ("Note") secured by a mortgage ("Mortgage") signed by Plaintiff Karen Yeh Ho ("Plaintiff") and her husband, Wing Kei Ho ("Kei Ho") (collectively, "Borrowers") on property located at 8038 Tangelo Drive, Boynton Beach, FL 33437 ("Property"). *See* D.E. 85[1] at 2, ¶ 1; D.E. 41, at 7:26-8:1; WF Ex. 4;[2] WF Ex. 5.

---

[1] D.E. 85 is this Court's Opinion and Order on Motion for Summary Judgment ("MSJ Order"). The paragraph numbers relate to the numbered "Undisputed Material Facts" found by the Court in the MSJ Order.
[2] Wells Fargo's trial exhibits are referred to throughout as "WF Ex. ___."

2. At the time of the Loan, Plaintiff and Kei Ho were married.  D.E. 85 at 2, ¶ 1; WF Ex. 5 at 1.

3. The Note and Mortgage were subsequently transferred to Wells Fargo, and after Borrowers defaulted on the Mortgage on August 1, 2011, Wells Fargo filed a foreclosure complaint on February 16, 2012 ("Foreclosure Action").  D.E. 85 at 2, ¶ 1.

4. While the foreclosure action was pending, Wells Fargo approved Plaintiff for a streamlined loan modification.  WF Ex. 10; WF Ex. 11; *see also* D.E. 85 at 2, ¶ 2.

5. Wells Fargo sent Plaintiff a written offer for a streamlined loan modification on July 20, 2013 ("Offer Letter") because she met the program eligibility criteria based on the value of the Property.  *See* D.E. 85 at 2, ¶ 2; D.E. 41 at App'x 241-48; WF Ex. 10; WF Ex. 11.

6. A streamlined loan modification is different from other loan modification options because the borrower is not required to submit any documentation to apply for the modification.  WF Ex. 11.  The process is streamlined by only requiring borrowers to make trial period payments and execute the modification agreement.  D.E. 85 at 2-3, ¶¶ 2-4.  As stated in the Offer Letter, Plaintiff was "already approved" for the streamlined modification "[b]ased on [her] home's value."  *See* D.E. 41 at App'x 241-48; WF Ex. 11.

7. The Offer Letter informed Plaintiff that she was eligible for a streamlined loan modification as an option to stay in her home and, if she wanted to pursue this option, she was required to make three timely payments on her Mortgage under a Streamlined Modification Trial Period Plan ("TPP"), due on September 1, 2013, October 1, 2013, and November 1, 2013.  *Id*; D.E. 85 at 2, ¶¶ 2-3.  The Offer Letter also noted that in addition to making the TPP payments, Plaintiff was required to submit signed copies of the loan modification agreement that Wells Fargo would send to her upon completion of the TPP payments.  D.E. 41 at App'x 241-48; WF Ex. 11.

8. After numerous attempts to contact Plaintiff between July 23 and September 13, 2013, *see* WF Ex. 16 (entries dated July 23, 2013 through September 13, 2013), Wells Fargo made contact with Plaintiff on September 17, 2013, and she indicated that she wanted to proceed with the streamlined loan modification. WF Ex. 16 (entry dated September 17, 2013).

9. Wells Fargo received Plaintiff's first TPP payment on or about September 27, 2013 and Wells Fargo accepted payment although it was late. *See generally* D.E. 85 at 2, ¶ 3; WF Ex. 16 (entries dated September 20, 2013 through September 27, 2013).

10. Plaintiff also made her second TPP payment on or about September 27, 2013, and subsequently made the final TPP payment on or about October 31, 2013. *See generally id.*; WF Ex. 16 (entry dated October 31, 2013).

11. Wells Fargo then fully approved Plaintiff's loan modification on November 25, 2013 and sent Plaintiff a letter the following day ("Approval Letter"), enclosing the final modification agreement for both Plaintiff and her husband, Kei Ho, to sign. *See* D.E. 85 at 3, ¶ 4; WF Ex. 17.  The Approval Letter states, "[t]his letter confirms our agreement to a modification of your mortgage loan that we recently discussed.  In order to finalize the modification, we will need you to complete the required steps outlined below."  WF Ex. 17.  The required steps were those typical of a loan closing, including execution and return of original copies of the enclosed modification agreement by both Plaintiff and Kei Ho within fourteen days.  The modification agreement expressly required the signatures of both Plaintiff and Kei Ho, as Borrowers on the Mortgage.  *See* D.E. 85 at 3, ¶ 4; *see also* WF Ex. 16 (entries dated August 25, 2013 and November 25, 2013); WF Ex. 17; WF Ex. 18.

12. The Approval Letter also notes that if one of the Borrowers does not sign the modification agreement, Borrowers must provide supporting documentation as to why a signature

3

is not required to include at a minimum a recorded Quit Claim Deed *and* divorce decree. *See* WF Ex. 17.

      13. Additionally, the Approval Letter states:

> If all pages of the above documents and payment are not received within fourteen (14) days from the date of this letter, we will conclude that you are no longer interested in modifying your existing loan and will cancel your request for a modification. Until we receive the signed and completed documents and payment as requested above, we are unable to complete the modification; we will continue to service your mortgage loan – which may include…any legal proceedings.

*Id.*

      14. On December 6, 2013, Wells Fargo received a copy (not the original) of the modification agreement executed only by Plaintiff and missing the signature of Kei Ho. *See* D.E. 85 at 3, ¶ 5; WF Ex. 19.

      15. From December 9, 2013 to December 31, 2013, Wells Fargo attempted to call Plaintiff on eight different occasions to advise her that Wells Fargo needed originals of the modification agreement executed by both her and Kei Ho as required by the Approval Letter or, alternatively, needed to know her marital status and obtain a divorce decree if it was going to remove Kei Ho from the modification agreement. *See* WF Ex. 16 (entries dated December 9, 2013 through December 26, 2013).

      16. Wells Fargo finally contacted Plaintiff on January 2, 2014, at which time Wells Fargo explained the problems with the modification documents to Plaintiff, and she ultimately hung up. WF Ex. 16 (entries dated January 2, 2014).

      17. Plaintiff refused to return a fully signed loan modification agreement, or alternatively, a divorce decree to remove Kei Ho from the agreement and acknowledges that she was unwilling to return a fully signed loan modification. *See id*; *see also* D.E. 78 at 4, ¶ 18.

18. In fact, Plaintiff admitted at trial that (1) she received the loan modification documents but that she did not want her husband to sign the loan modification; (2) that her husband did not want to sign the loan modification documents and (3) only she signed the loan modification documents. Kei Ho testified that they received notices about the loan modification, but he refused to sign it.

19. Wells Fargo then escalated the account for removal from loan modification on January 3, 2014, and the account was removed on January 13, 2014. *See* WF Ex. 16 (entries dated January 13, 2014); WF Ex. 22.

20. Wells Fargo sent Plaintiff a letter on January 13, 2014, notifying her that the loan modification could not be finalized because Wells Fargo did not receive the signed modification agreement ("January Letter"), and the Foreclosure Action resumed. *See id.*

21. On July 17, 2014, Borrowers, via their counsel, consented to final judgment in the Foreclosure Action to foreclose on the Property. *See* D.E. 85 at 5, ¶¶ 12-13; D.E. 41, at App'x 159-61; WF Ex. 41.

22. The Court in the foreclosure action entered Final Judgment in favor of Wells Fargo, and the Property was sold at a foreclosure sale on November 14, 2014. *See* D.E. 85 at 6, ¶ 15; D.E. 41, at App'x 163-69; WF Ex. 42.

23. Borrowers continued to defend the Foreclosure Action for the next several years through an appeal to the Fourth District Court of Appeal. *See* D.E. 85 at 6, ¶¶ 14-17. The Fourth District Court of Appeal affirmed the foreclosure court's judgment allowing foreclosure on the Property. *Id.* at 6, ¶ 17.

II. **CONCLUSIONS OF LAW**

1. The Equal Credit Opportunity Act ("ECOA") and its implementing regulation, Regulation B, set forth requirements for notice that creditors must provide to applicants applying for credit at 15 U.S.C. § 1691(d) and 12 C.F.R. § 202.9. The type of notice required depends on whether an application is complete or incomplete.

2. ECOA requires that "within thirty days 'after receipt of a completed application for credit, a creditor shall notify the applicant of its actions on the application.'" *Regions Bank v. Legal Outsource PA*, 936 F. 3d 1184, 1192 (11th Cir. 2019); *see also* 15 U.S.C. § 1691(d)(1).

3. ECOA requires that notice be provided with respect to incomplete applications for credit. Specifically, ECOA requires that after receipt of an incomplete application, Wells Fargo must notify the applicant within thirty days of either the action taken, or items needed to complete the application. 12 C.F.R. § 202.9(c)(1).

4. Plaintiff's payment of the TPP amounts constitutes her "application" for the streamlined loan modification.

5. Wells Fargo provided timely written notice of approval by sending the November 2013 Approval Letter to Plaintiff within 30 days of receiving the final TPP payment in compliance with 12 C.F.R. § 202.9(a)(1)(i) and 15 U.S.C. § 1691(d)(1).

6. The Approval Letter constituted written notice of incompleteness in accordance with 12 C.F.R. § 202.9(c)(1)(ii) and (c)(2).

7. Wells Fargo's oral notification to Plaintiff of her improperly executed modification agreement and the documentation she needed to submit to finalize the loan modification on January 2, 2014, was also sufficient under 12 C.F.R. § 202.9(c)(3). Once oral notification is provided, the creditor then has thirty (30) days to provide written notification. *Brown v. Wells*

*Fargo Home Mortg.*, No. 15-CV-467-JL, 2017 WL 3206315, at *6 (D.N.H. July 26, 2017) ("'If the application remains incomplete' after such oral notice of incompleteness, Regulation B obligates the creditor to provide written notice, again within 30 days, 'of action taken in accordance with [12 C.F.R § 202.9(a)]; or of the incompleteness, in accordance with [12 C.F.R. § 202.9(c)(2)].'"; *see also Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC11-3758, 2015 WL 4602591, at *22 (D. Md. July 29, 2015) ("[T]he clock does not necessarily begin to run when the loan modification application first is submitted. Notice of incompleteness may be provided orally initially and the thirty-day requirement to provide notice of any action taken by the creditor applies after a completed application is submitted."). Plaintiff received the required written notices required no later than the January 13, 2014 Letter, which was within the thirty days after the oral notification of the fact that the modification agreement was not completed properly by either having it signed by her husband or providing evidence of her divorce from her husband.

8.      Accordingly, because Wells Fargo gave proper notice to Plaintiff as required by the ECOC, her claim fails on the merits. Since Plaintiff has failed to prove a claim under the ECOA, there is no need for the Court to consider the question of damages.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Judgment shall be entered in favor of Defendant and against Plaintiff by separate order of the Court.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 18th day of March, 2022.

KENNETH A. MARRA
United States District Judge